## BENEDICT G. AKINS'S CASE.

Suffolk.    January 9, 1939. — April 10, 1939.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Workmen's Compensation Act*, Incapacity, Amount of compensation, Lump sum payments. *Constitutional Law*, Police power, Impairment of the obligation of contracts.

Evidence warranted findings by the Industrial Accident Board that a minor, who had suffered a permanent eye injury and then had resumed work for the same employer at the same rate of wages for nearly three years and later justifiably had left that employment because of a reasonable apprehension of further injury in continuing to work for his former employer, had sustained a permanent partial disability and that his average weekly earning capacity for a certain period after the hearing would be a sum substantially less than what it had been at the time of his injury; and a lump sum award was justified under G. L. (Ter. Ed.) c. 152, § 48.

It *was stated* that the provisions of G. L. (Ter. Ed.) c. 152, § 48, allowing the Industrial Accident Board, without the consent of the insurer, to make a lump sum award to an adult employee injured when he was a minor, were not unreasonable nor unconstitutional.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

The case was last heard by a single member of the board on April 5, 1938, and the decision of the board was filed on May 26, 1938.

A decree in accordance with the board's decision was entered by order of *Kirk*, J.   The insurer appealed.

*J. E. Hannigan*, (*E. M. McMahon* with him,) for the insurer.

*J. Bear*, for the claimant.

RONAN, J.   This is an appeal from a decree of the Superior Court ordering the insurer to pay a lump sum award to the employee, in accordance with a decision of he Industrial Accident Board.   The board found that the employee, a minor, at the date of his injury on December 29, 1934, received a permanently disabling injury which resulted in

a "reduction of vision in the left eye to 20/70th of normal with glasses"; that the employee's apprehension of further injury in continuing the same kind of work at which he was injured was reasonable and was an adequate cause for seeking work elsewhere; that he has a permanent disability that is partial; that for the period of four hundred eighty-six weeks next succeeding the date of the hearing he would be able to earn an average weekly wage of $5.70; that he was entitled to partial incapacity compensation at $5.50 a week, which is two thirds of the difference between his average weekly wages at the time he was injured and his present earning capacity, and that the present value of the payment, computed with a discount of three per cent, is $2,335.94 which the board, in the exercise of its discretion in accordance with G. L. (Ter. Ed.) c. 152, § 48, awarded as a lump sum to the employee.

The insurer contends that the employee has failed to show any impairment of earning capacity due to the injury; that the evidence did not warrant a finding that he left his employment because of a reasonable apprehension of further injury; that the evidence is insufficient as to how long the incapacity will continue to exist; that the section under which the award was made is unreasonable, and that the award was invalid as the insurer did not consent to it.

There was evidence that the employee was engaged in general work at a printer's plant, sweeping floors, doing up bundles and shipping goods. He was struck in the eye by a flying nail which caused a perforating injury through the cornea, iris and lens of the eye. The eye specialist who attended him in behalf of the insurer testified that when he last saw him in November, 1935, "the boy had reached an end result at that time"; that he had seventy-five per cent vision in the injured eye; and that without glasses he could with that eye see large objects. The employee testified that he had difficulty in driving an automobile in the daytime as there was a glare in his right eye and he would have to keep the left eye closed; and that he could not operate an automobile at night. The single member observed the employee's eyes and stated for the record

"that it is very apparent that he has an injury to the left eye." The nature and extent of the injury, the appearance of the eye, and the testimony of the insurer's specialist warranted a finding that the employee has a permanently disabling injury. Such a finding is not rendered erroneous by the testimony of the employee at the hearing on April 5, 1938, that he could not tell if his eye was any better then than it was in the preceding October, as his eye had not been examined recently. The nature and the permanency of the injury were questions of fact for the determination of the board. *Pass's Case*, 232 Mass. 515. *Amodio's Case*, 233 Mass. 104. An eye injury shown to have resulted in a loss of vision may properly be found to be a disability and, in the case at bar, we cannot say that there was not sufficient evidence to support the finding that it constituted a partial permanent disability. *Nichols's Case*, 217 Mass. 3. *Moran's Case*, 230 Mass. 500. *Hebron's Case*, 247 Mass. 427. *Morrell's Case*, 278 Mass. 485. *Hurwitz's Case*, 280 Mass. 477. *Biscardi's Case*, 284 Mass. 14. *Fennell's Case*, 289 Mass. 89.

The employee, however, is not entitled to compensation for an industrial injury (other than injuries for which specific compensation is awarded under G. L. [Ter. Ed.] c. 152, §§ 36, 37) resulting in a physical disability if there is no impairment of earning capacity. The purpose of the workmen's compensation act was to substitute for the then existing remedies a system of money payments based upon loss of wages. *Gagnon's Case*, 228 Mass. 334. *Devine's Case*, 236 Mass. 588. *Federico's Case*, 283 Mass. 430. *Donahue's Case*, 292 Mass. 329.

After the injury, the employee returned to work and continued at his regular occupation until he quit about the middle of November, 1937. He was paid at the same rate as he was paid before the accident, but his weekly wages were less than they were before the accident on account of the dull condition of the business. There is no evidence that he suffered any diminution of his power to earn while he was engaged at this employment, *Johnson's Case*, 242 Mass. 489; *Hurwitz's Case*, 280 Mass. 477, and

the fact that he received less wages was due not to his inability to do the work but to the depressed condition of the business — a cause for which compensation cannot be awarded under the act. *Capone's Case*, 239 Mass. 331. *Driscoll's Case*, 243 Mass. 236. *Korobchuk's Case*, 277 Mass. 534. *Manley's Case*, 282 Mass. 38.

There was evidence that there was no opportunity for the employee to better his position by learning the printer's trade. His request for an increase in salary was refused. He testified that when he asked his employer to permit him to learn a trade there the employer referred to the injured eye and said that the employee would have to take care of it. The employee had a fear he might get hurt again in the same way in which his previous injury occurred. Since he returned to work he had been struck in the cheek by a flying nail. The employer testified that the employee's one fear was that he might again injure himself in a similar manner. We cannot say that the finding that his apprehension was reasonable and was an adequate cause for his seeking some other employment was unwarranted. A second injury to one of his eyes would be apt to cause more damage than it would to a normal person. The resulting mental condition of the employee would be an element of damages in an action of tort for personal injuries, and it could have been found that the apprehension that he experienced could be traced to his injury as a proximate cause. *Roswell* v. *Leslie*, 133 Mass. 589. *Buckley* v. *Boston Elevated Railway*, 215 Mass. 50. *Sinclair's Case*, 248 Mass. 414. The employee was required to act fairly and reasonably toward the insurer if he intended to seek compensation. He could not remain idle when there was available work which he could secure and was able to perform. He could not decline proper medical treatment. He was under the general obligation to adopt reasonable measures to minimize his damages. *Fairfield* v. *Salem*, 213 Mass. 296. *Driscoll's Case*, 243 Mass. 236. *Snooks's Case*, 264 Mass. 92. The insurer cannot complain of conduct shown to have been reasonable.

The insurer did not raise before the board the question

that G. L. (Ter. Ed.) c. 152, § 48, was unreasonable or that a lump sum award without the consent of the insurer would be invalid. Ordinarily, no questions are open on appeal other than those saved at the hearing before the board. *Fennell's Case,* 289 Mass. 89. *Di Clavio's Case,* 293 Mass. 259. *Rich's Case,* 301 Mass. 545. Even if we assume that these issues go to the power of the board to make any such award, then we perceive no error. The employee was a minor at the time of his injury and the Legislature could furnish such safeguards as it deemed necessary to protect his interests in any award that he might become entitled to under the act. *Commonwealth* v. *Griffith,* 204 Mass. 18. *Commonwealth* v. *Hong,* 261 Mass. 226.

The record does not show when the insurer entered into its contract of insurance with the employer. If the contract was made subsequently to the enactment of St. 1930, c. 181, which amended § 48 of G. L. c. 152 by extending the authority of the board to grant a lump sum award to the injured minor after he became of age (see *Osborne's Case,* 257 Mass. 532), then the contract must be construed in the light of the statute. The insurer was free to enter into such a contract and having done so voluntarily it cannot now be heard to avoid the payment of a risk covered by its contract of insurance. *Vance* v. *Burke,* 267 Mass. 394. *Caccavo* v. *Kearney,* 286 Mass. 480. *Fallon* v. *Mains, ante,* 166. We do not intimate that, if the contract of insurance was made prior to St. 1930, c. 181, the insurer would have any standing to interpose these objections. The exercise of the constitutional grant to the Legislature to enact such laws as the public interest requires cannot be curbed by an agreement between private individuals. Freedom of contract simply means freedom from arbitrary and capricious action upon the part of the State or from employing means which cannot have any logical and definite relation to the promotion of the public health, the public safety, the public morals and the public welfare, and contractual rights are subordinate to the right of the State to safeguard the public interest through recourse to the police power. *Salem* v. *Maynes,* 123 Mass.

372. *Milk Control Board* v. *Gosselin's Dairy, Inc.* 301
Mass. 174. *Texas & New Orleans Railroad* v. *Miller*, 221
U. S. 408. *Nebbia* v. *New York*, 291 U. S. 502. *West
Coast Hotel Co.* v. *Parrish*, 300 U. S. 379. Legislation
for the protection of those who have sustained injuries
while engaged in industry is a matter affecting the gen-
eral public interest. *Young* v. *Duncan*, 218 Mass. 346.
*Howes Brothers Co.* v. *Unemployment Compensation Com-
mission*, 296 Mass. 275. *Mountain Timber Co.* v. *Washing-
ton*, 243 U. S. 219. *Carmichael* v. *Southern Coal & Coke Co.*
301 U. S. 495. *Steward Machine Co.* v. *Davis*, 301 U. S.
548.

The employee had attended high school for two years
and there was testimony that he was of more than average
intelligence. The single member had seen him as a witness
at three hearings and had an opportunity to judge his
appearance, ability, aptitude for work and credibility.
*Gagnon's Case*, 228 Mass. 334. *Wrobel* v. *General Accident
Fire & Life Assurance Corp. Ltd.* 288 Mass. 206. The evi-
dence showed in considerable detail the wages earned by
the employee from the time he first went to work in Septem-
ber, 1933, to the date of the last hearing on April 5, 1938.
G. L. (Ter. Ed.) c. 152, § 48, provides that "The depart-
ment, in the case of a minor who has received permanently
disabling injuries, either partial or total, may, at any time
before or after he attains his majority, provide that he be
compensated in whole or in part by the payment of a lump
sum, of an amount to be fixed by the department, not ex-
ceeding the amount provided by this chapter." The sum
awarded must be the present value of the total amount
that the employee proves that he will sustain in loss of
wages but not in excess of the maximum amount prescribed
by c. 152. The determination of the impairment of earning
capacity in the future frequently arises in actions of tort
for personal injuries, and juries commonly decide the
question. The record in the case at bar furnishes sufficient
evidence to enable the board, in the exercise of sound judg-
ment and common sense, to ascertain the amount of such
loss. The burden was upon the employee to prove that

there would be an impairment in his ability to earn wages for the whole or a part of the period during which he would be entitled to the payment of weekly compensation for partial incapacity. Indeed, damages for future impairment of ability to labor have been allowed in the case of a minor when there was no evidence of wages. The conclusion of the board is supported by the evidence and we cannot disturb the finding. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1. *McCarthy's Case,* 226 Mass. 444. *Moran's Case,* 230 Mass. 500. *Joos's Case,* 267 Mass. 322. *Cross* v. *Sharaffa,* 281 Mass. 329. *Shea* v. *Rettie,* 287 Mass. 454.

The employee's request for the assessment upon the insurer of the entire costs of these proceedings in accordance with G. L. (Ter. Ed.) c. 152, § 14, is denied. *Sylvia's Case,* 298 Mass. 27. *Maguskas's Case,* 298 Mass. 80. *Rich's Case,* 301 Mass. 545.

*Decree affirmed.*