FULFORD MANUFACTURING COMPANY *vs*. MARIA LUPOLI.

JULY 21, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This is a petition brought under the workmen's compensation act, general laws 1938, chapter 300, by an employer to review the incapacity for work of the

respondent, previously its employee. The petition is now before us on the appeal of the respondent from the entry of a decree in the superior court terminating the payment of compensation.

It appears from the evidence that in October 1945 the respondent suffered an injury by accident arising out of and in the course of her employment. At that time she was employed as a foot press operator and had been working in petitioner's jewelry shop for about eleven months. In the course of her employment she injured her lower back and was unable to return to work the following day or thereafter. The parties entered into a preliminary agreement, approved by the director of labor, which provided that she be paid $19.44 compensation per week commencing October 13, 1945 and continuing for the duration of total incapacity. Apparently she has been paid this sum up to the present time. The agreement also set out that the cause of injury was "While operating press, injured felt pain in back" and that the nature and location of the injury was "Sacro-iliac sprain."

The evidence shows that the respondent from time to time after her injury was examined by several physicians who gave their respective opinions as to her physical condition and her ability to return to work. When the petition for review was heard in the superior court March 3, 1948 two of the physicians testified for the petitioner and one for the respondent. A doctor who was called by petitioner testified that he had last examined the respondent on July 8, 1947 and at that time reached the conclusion that "There were very few changes over the previous examination, with a slight loss of weight. There was more limitation to bending the spine backwards and this slight atrophy of the left thigh was noted. On the other hand it was more significant that muscle spasm had disappeared in the lumbar region and that the psychoneurotic ailment had improved." He also testified as follows: "Q. And did your opinion remain the same with regard to this woman's

ability to work? A. No. I feel that now she was able to take up light work in a sitting position not requiring stooping or lifting or rotation of the spine." The doctor then stated that in his opinion she could put ornaments on corrugated paper while sitting, but that probably in the beginning she could not do a full day's work, perhaps two or three hours at first and then gradually increase until she was able to work full time.

Another doctor who testified for the petitioner stated that he had last examined the respondent on June 13, 1947 and that after so doing he gave as his opinion that the respondent "is able to do some type of light work, the nature of which should not be that of lifting or bending of her back. I am still of the opinion that she is not totally disabled for work." This doctor was also of the opinion that she might be able to put ornaments on corrugated paper while sitting if not required to bend or lift in any way, and that she probably would have to work up to a full day gradually. The respondent's attending physician testified that he had treated her continually off and on since the accident, including October and November 1947, and in his judgment her condition by February 18, 1948 was such that she should try to do light work which did not involve bending or twisting of the spine.

The petitioner introduced evidence showing that on August 21, 1947 it sent a letter to the respondent reading as follows: "We have been advised that you are now capable of doing light work. Please be informed that we have a very light job for you putting ornaments on corrugated paper while being seated. You will not be required to lift or bend in any way, shape or manner. Please report for work at your earliest convenience." She did not answer that letter or appear for work but her attorney sent the petitioner a letter suggesting that it file a petition with the director of labor. The instant petition was filed in the office of the director on September 4, 1947. On November 20, 1947 the petitioner by registered mail re-

newed to the respondent its offer of light work of the same character as suggested in its letter of August 21, 1947. The pay for this work was to be 66 cents instead of 65 cents per hour which she had received for operating the press.

In response to the letter of November 20, 1947, the respondent came to the petitioner's shop on November 24 and started the light work described in the above letter. After working between an hour and a half and two hours she complained that she could not continue and went home. She did not return to do any further work. The circumstances in which she left at that time appear from the testimony of two witnesses. The respondent described the occurrence in this manner. After stating that she told the forelady she could not work any more the foreman was called and given the same information whereupon, according to the respondent's testimony: "He call the superintendent, you know. He ask me, 'Why you go home?' I told him I can't stand no more and I go home and come again tomorrow morning and he told me, 'No. I don't want you a couple of hours and come back in the morning. I want you all the day.' And I told him, 'No. I can't stand no more than two or three hours.' "

The petitioner's superintendent of production testified as follows: "A. Maria Lupoli came in on time on November 24th and worked approximately an hour and forty minutes or perhaps two hours, and I was coming back into that particular department and I spied Maria Lupoli with her hat and coat on and I asked her where she was going and she said she was going home, and I asked her why. She said, 'Well, I have to lie down. I can't sit.' * * * Q. Did she say that she would return to work the next day? A. No. Q. Did she return to work after that time? A. No. Q. Did you tell her not to return to work? A. No."

In deciding the matter before him the trial justice found that on November 24, 1947 the respondent was physically able to attempt to perform the light work which the peti-

tioner was then offering her, and also that the respondent did not make an honest effort to return to petitioner's shop and try to do such work. If there was any legal evidence to support these findings it is settled that in the absence of fraud they become conclusive under the express provisions of art. III, §6, of the act and our decisions thereunder. Upon consideration of the transcript of the testimony and the exhibits we are of the opinion that there was such legal evidence to support the finding first above mentioned.

While the medical testimony was not entirely without dispute, nevertheless there was positive evidence from two physicians, as we have hereinbefore briefly set out, to the effect that in June and July 1947 the respondent was physically able to perform and should attempt to perform light work which did not require bending, lifting, or twisting and it was a reasonable inference from such evidence that her condition in November was at least the same as that in June and July. The petitioner had offered her such a job in August and again in November.

It is held generally that in the ordinary case an injured employee has the duty of being cooperative, within reason, and of attempting to perform work, when offered, which in the opinion of qualified medical witnesses he can safely do in order that his actual working capacity may, if possible, be ascertained. An injured employee who without good reason does not carry out that duty may have to suffer the consequences. *Reilley* v. *Carroll*, 110 Conn. 282; *Akins's Case*, 302 Mass. 562; *Bakaloff* v. *Industrial Acc. Comm'n*, 105 Cal. App. 295; *Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522. Such a principle of law has been recognized in this state in a case which involved a question of partial incapacity. In *Collyer Insulated Wire Co.* v. *Hockenson*, 71 R. I. 415, at page 419, the court approved a direction given the respondent by the trial justice to the effect that the former should, among other things, at least try to do the light work the petitioner had offered him

and "that if he persisted in being uncooperative and obstinate in his refusal to try to do light work in any capacity for any employer, in order that the amount of his disability could be fairly fixed, he ran the risk of losing all benefits provided for an injured employee by the act." See also *M. & M. Transportation Co.* v. *Della Posta,* 74 R. I. 514.

In regard to the finding of the trial justice that the respondent did not make an honest effort to return to the petitioner's shop and try to do the light work offered her, it is our opinion from a consideration of the transcript that there is no legal evidence which supports that finding. In those circumstances such a finding amounts to an error of law and will be reviewed by this court upon appeal and set aside. *Jillson* v. *Ross,* 38 R. I. 145. It is not disputed that the respondent went to the petitioner's shop on the morning of November 24, 1947 and for about two hours performed the light work which the petitioner had offered her. However, the important part of the evidence bearing upon the above finding is that which deals with the alleged condition imposed by the petitioner's superintendent when she left its place of business that morning after working as indicated.

It appears from the respondent's testimony that the superintendent told her at that time in substance that he did not want her to come back the next morning and work only for a couple of hours but that he wanted her to work all day. The respondent demurred stating that she could then stand only two or three hours' work. The trial justice evidently believed that the superintendent in his testimony had denied making such a statement to the respondent and that therefore he had before him conflicting testimony on that narrow issue. It is our opinion that he misconceived the evidence in that connection. A careful examination of the transcript shows that such conflict is more apparent than real. After answering in the negative a series of somewhat leading questions the superintendent testified that he did not tell respondent

not to return to work. That statement does not go far enough and does not fully meet or deny the important testimony of the respondent that when she left he told her not to return *unless she could work all day.* There was ample opportunity for the petitioner to contradict such testimony but it never did so. In the circumstances a clear categorical denial was called for if the respondent's testimony was incorrect. As the record was left, however, her testimony on that point stood uncontradicted.

Assuming therefore that the superintendent made the statement attributed to him by the respondent its effect was to prevent her from working a few hours each day, as the doctors in their testimony had indicated would probably be necessary so that she might gradually rehabilitate herself until she could work a full day. In our opinion on the record herein the finding of the trial justice that the respondent did not make an honest effort to return to the petitioner's place of business and try to perform the light work offered her was erroneous and must be set aside. The respondent should have another chance to rehabilitate herself in accordance with the medical testimony before being denied compensation on the ground that she had not made an attempt in good faith to do so.

In the circumstances it is our judgment that a new decree should be entered by the superior court continuing the respondent's compensation; providing, however, that if the petitioner again offers the respondent in writing an opportunity to report on a definite date to perform light work of the general nature described in the medical evidence herein, the respondent should accept that offer and be given a reasonable opportunity to rehabilitate herself in accordance with such evidence; and providing further that if respondent does not accept such offer or if it is accepted and she does not make an attempt in good faith to perform such work, then all compensation to her shall terminate.

The respondent's appeal is sustained, the decree appealed

from is reversed, and the cause is remanded to the superior court for the entry of a new decree in accordance with this opinion.

*Haslam, Arnold & Sumpter, Stephen F. Mullen,* for petitioner.

*Luigi Capasso,* for respondent.