**Jon M. DELANO**

v.

**CITY OF SOUTH PORTLAND and Middlesex Mutual Insurance Company.**

Supreme Judicial Court of Maine.

Aug. 27, 1979.

Richardson, Hildreth, Tyler & Troubh by Ronald D. Russell, Portland (orally), for plaintiff.

Hewes, Culley & Feehan by George W. Beals (orally), Richard D. Hewes, Portland, for defendants.

Before McKUSICK, C. J., WERNICK and ARCHIBALD, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.[1]

On January 21, 1972 Jon M. Delano sustained a work-related injury to his left knee while in the employ of the City of South Portland as a heavy equipment operator, his job classification being Equipment Operator II. Up until June 9, 1975 Delano did receive total disability benefits during several periods of disablement due to the original injury and three subsequent recurrences.

1. Sitting by assignment.

By arrangement with the Director of the Public Works Department, Richard R. Brado, Delano then returned to work for the City as dump attendant, with the understanding that he would retain his classification of Equipment Operator II, although the dump attendant job was classified as that of a Laborer I. They also agreed that Delano would only work forty hours tending the dump and would not have to put in any overtime; on Delano's express concern about having to return to work as a "wing man" on the trucks for fear of re-injuring the knee, Brado assured him that he would not be called upon to do that type of work.

In late 1975 during a snow storm, one of Delano's supervisors assigned him to serve as a "wing man" on a snow plow. Delano refused the assignment, advising the supervisor of his fear of re-injuring his knee in that position and of his understanding with Mr. Brado that he would not be called upon to do that type of work. A check with the Director confirmed the previous agreement and Delano was not pressed to serve.

Following the receipt of a letter from Delano's treating physician at the request of the Director of the Public Works Department to the effect that, because of his leg injury, Delano could not operate heavy equipment, the City, on March 26, 1976 officially notified Delano that, due to his inability to perform the duties of an Equipment Operator II according to the medical reports, his classification was being changed from Equipment Operator II to Laborer I at the current hourly pay rate for said classification. The reclassification entailed a reduction in pay of $26.00 per week.

Delano then filed three petitions with the Industrial Accident Commission:[2] on April 22, 1976, a petition for further compensation on account of partial incapacity pursuant to 39 M.R.S.A., § 55; on May 26, 1976 a petition for transfer to suitable work during period of rehabilitation as provided in 39 M.R.S.A., § 66–A; and on June 15, 1976 a petition requesting a Commission determination whether the City had discriminated against Delano and, if so, for an award of net wages lost by reason of such discrimination under 39 M.R.S.A., § 111.

The petitions were consolidated for hearing, which took place on September 30, 1976. By order dated November 8, 1978 the Commissioner found that Delano's demotion in job classification constituted the type of discrimination prohibited by 39 M.R.S.A. § 111 and ordered the City of South Portland

"to pay to Jon M. Delano the difference between the wage rate of a laborer and that of an Operator II, from March 29, 1976, as long as such wage disperity (sic) between the classifications exist,"

dismissing without prejudice the petition for transfer to suitable work on the ground of mootness. The City appeals from the Superior Court's conforming pro forma decree. We sustain the appeal.

Section 111 of Title 39 provides as follows:

"§ 111. *Discrimination*

No employee shall be discriminated against by any employer in any way for testifying or asserting any claim under this Act. Any employer who so discriminates against any employee shall be liable to such employee on petition before the commission and hearing before the commission, for all net wages lost suffered by such employee by reason of such discrimination."

Noting that "[t]his provision, as any provision under the Worker's Compensation Act, must be construed liberally in favor of the worker in keeping with the expressly declared intent of the Act," the Commissioner interpreted the section broadly as prohibiting employer discrimination against an employee for exercising a right afforded an injured employee under the Act, including "the right not to be forced into employment which is likely to aggravate his injury or which [the employee] will be unable to carry out because of his injury." Finding

---

**2.** The name of the Industrial Accident Commission has since been changed to Workers' Compensation Commission. P.L.1978, c. 612.

that the City's change of classification respecting Delano's employment status was a demotion resulting directly from Delano's refusal to carry out his previous assignment to the "wing man" position on the snow plow and that Delano's unwillingness to comply with his supervisor's request was the exercise by an employee of the right within the scope of the Worker's Compensation Act not to be forced into work particularly hazardous to his current work-related impaired physical condition, the Commissioner further found that such action by the City was unlawful discrimination within the meaning of section 111 of the Act. The City contends, however, that the only employer discrimination prohibited by section 111, except when based upon an employee's "testifying" in a proceeding under the Act, contemplates discriminatory action resulting solely from the filing of a petition for compensation. With this narrow interpretation of the Act, we disagree.

Thus, the issue for decision is, what did the Legislature intend when it prohibited employer discrimination against an employee "in any way" for "asserting any claim under this Act?"

■ In determining legislative intent respecting any ambiguity in the Workers' Compensation Act, we must bear in mind the Legislature's mandate that the Act be given a liberal construction "with a view to carrying out its general purpose." 39 M.R.S.A., § 92. The basic objective of the Act, in compelling employers to pay compensation benefits to their employees when suffering work-related injuries, is to transfer the burdens resulting from industrial injuries from the individual employee to the employer with the ultimate distribution of the cost of such industrial insurance program upon the consumer-society as a whole. See *Brown v. Palmer Construction Company, Inc.*, Me., 295 A.2d 263, 264–265 (1972); *Bartley v. Couture*, 143 Me. 69, 78, 55 A.2d 438, 443 (1947); *MacDonald v. Employers' Liability Assurance Corporation*, 120 Me. 52, 112 A. 719 (1921).

Implementing the legislative will, our Court has consistently given the Act a liberal construction favorable to the employee, which it is by law mandated to do, to accomplish its intended beneficial results and carry out its general humanitarian purpose. *Gilbert v. Maheux*, Me., 391 A.2d 1203, 1205 (1978); *Ross v. Oxford Paper Co.*, Me., 363 A.2d 712 (1976); *In re Dudley*, Me., 256 A.2d 592 (1969).

■ We recognize, however, that, notwithstanding the legislative mandatory directive to apply a liberal interpretation to the Act generally, such does not justify judicial creation of rights or liabilities under the guise of construction. The scope of liberality to be afforded the Act must come from the Legislature. *Simpson's Case*, 144 Me. 162, 167, 66 A.2d 417, 419 (1949).

Though courts must afford equal treatment under the law to employer and employee, even when applying the liberal construction rule mandated by the Legislature (*White v. Eastern Mfg. Co.*, 120 Me. 62, 112 A. 841, 16 A.L.R. 1165 (1921)), nevertheless, we must not lose sight of the factual purpose and intended objective of the Workers' Compensation Act, i. e. adequate protection to employees against the consequences of work-related injuries through its comprehensive benefit-compensation structure.

The One Hundred and Fifth Legislature in 1971 extended the Act's general remunerative benevolent protectiveness to employees by prohibiting specifically *any* employer discrimination in connection with employee "testifying or asserting any claim under this Act." See P.L.1971, c. 190. (39 M.R.S.A., § 111). Reading the word "claim" literally may possibly support the City's narrow interpretation which it requests this Court to place on the legislative terminology. But, our statutory obligation to construe the Act liberally in favor of the employee (39 M.R.S.A., § 92) demands that we construe the word "claim" in its broad sense as the equivalent of "right."

Militating against a narrow construction is the very language of section 111 protecting employees against discrimination by employers *in any way*, i. e. of any kind, because of employee enforcement of the

Act including any provisions thereof. If the Legislature had intended to restrict the terms "asserting any claim under this Act" to mean the assertion of a claim for compensation or benefits as distinguished from the voicing of any right under the workers' compensation law, it would have been so easy to say so directly as the Legislature consistently did in other areas of the Act, such as in section 64–A, where the same reads in part: "In any claim for compensation, where the employee etc.  .  .  .;" or in section 69, where the terminology used is also: "A claim for compensation under this Act,  .  .  .;" or in section 95, where the language is: "Any employee's claim for compensation under this Act shall be barred  .  .  ."

The One Hundred and Fifth Legislature, which enacted the anti-discrimination section 111 as an integral part of the Workers' Compensation Act, at the same session, passed the Human Rights Act which protects generally the right to freedom from discrimination in employment, declaring it to be a civil right. This Act prohibits employment discrimination (*except where based on a bona fide occupational qualification* ) such as, for an employer to discriminate against an employee with respect to tenure, promotion, transfer, compensation or in any other matter directly or indirectly, related to employment, because of his race or color, religion, age or country of ancestral origin.  P.L.1971, c. 501.

The One Hundred and Sixth Legislature expanded the Human Rights Act to prohibit employment discrimination against an employee because of *physical handicap*.  P.L. 1973, c. 705, § 5, effective June 28, 1974. The same Legislature, at its regular session, had already enacted employee protective legislation in connection with statements of injured employees to insurance carrier investigators and employer representatives, making them admissible in evidence only under certain specified conditions, one of which is that the employee has been previously advised in writing: "E.  The employer may not discriminate against him in any manner for refusing to make such a statement or exercising in any way his rights under this Title."  (Underscoring ours). P.L.1973, c. 554 (39 M.R.S.A., § 112).  We note that the Legislature did not limit the advisory notice to be given the employee to the fact that the employer may not discriminate against him by reason of the latter's exercise of his rights under this additional new section to the Workers' Compensation Act, but that the advice should be that the employer may not discriminate against the employee *for exercising in any way* his rights *under this Title*, meaning under the Workers' Compensation Act as a whole.

The Legislature in enacting 39 M.R.S.A., § 112 necessarily had in mind the only discrimination section of the Workers' Compensation Act, i. e. section 111, and in its use of language somewhat different from the section 111 draft, it was, without any doubt, construing the terms of section 111—asserting any claim under this Act—to be the equivalent of the terminology of section 112—exercising in any way his rights under this Title.—

True, we said in *Toothaker v. Maine Employment Security Commission*, Me., 217 A.2d 203 (1966), that legislative construction by a subsequent Legislature of any given statute passed by a prior Legislature is not conclusive upon the judicial branch of government in ascertaining the intention of the enacting Legislature.[3]  Nevertheless, when there is ambiguity in prior legislative terminology, subsequent enactments of a legislature throwing light on the legislative intent underlying a former related act, may be taken into consideration in dissipating the uncertainty in the prior statute.  *People v. Kezerian*, 63 Ill.App.3d 610, 20 Ill.Dec. 178, 181, 379 N.E.2d 1246, 1249 (1978); *Washington v. St. Charles Parish School*

**3.**  To the same effect, see *Hilligoss v. LaDow*, 368 N.E.2d 1365 (Ind.App.1977); *State ex rel. Grand Jury, etc. v. Pate*, Okl., 572 P.2d 226 (1977); *Swarthmore Company v. Comptroller of the Treasury*, 38 Md.App. 366, 381 A.2d 27

(1977); *Esquire, Inc. v. Ringer*, 192 U.S.App. D.C. 187, 591 F.2d 796 (D.C.Cir. 1978).  Contra: *Anderson v. City of Seattle*, 78 Wash.2d 201, 471 P.2d 87 (1970).

*Board*, La., 288 So.2d 321 (1974); *County of Nevada v. MacMillen*, 11 Cal.3d 662, 114 Cal.Rptr. 345, 522 P.2d 1345, 1353 (1974); *Inexco Oil Company v. Oil and Gas Conservation Com'n*, Wyo., 490 P.2d 1065, 1067 (1971); *Collins v. Town of Derry*, 109 N.H. 470, 256 A.2d 654, 655 (1969); *Crosby v. Barr*, Miss., 198 So.2d 571 (1967); *General Realty Improvement Co. v. City of New Haven*, 133 Conn. 238, 50 A.2d 59 (1946). Also *Red Lion Broadcasting Co. v. F. C. C.*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); but see *Mattz v. Arnett*, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92 (1973).

■ The word "claim," in its primary meaning is used to indicate the *assertion* of an existing right. In its secondary meaning it may be used to indicate the *right* itself. *Appeal of Beach*, 76 Conn. 118, 55 A. 596 (1903). See Webster's Third International Dictionary. We hold that, in the use of the expression "asserting any claim under this Act" in 39 M.R.S.A., § 111, the Legislature was referring to any right conferred by the Workers' Compensation Act on the employee, and not merely to the voicing of a demand for benefits by petition or otherwise. In reaching this conclusion, we are merely carrying out the legislative direction to construe the provisions of the Act liberally. As a result, we achieve a harmonious consistency in our interpretation of sections 111 and 112. Also, by rejecting the literal and narrow meaning of the word "claim" for the broad sense of "right" in section 111, we maintain uniformity of purpose in the Legislature's statutory scheme of proscribing unlawful employment discrimination under the Maine Human Rights Act and the Workers' Compensation Act. Both serve to protect the rights of the handicapped individual in the person of an industrial injured employee.

■ It is our duty to view as one piece of legislation the several statutes governing a particular subject matter such as in this case discrimination in employment and, when there is need for construction, to favor such an interpretation as will, as nearly as possible, make the particular statutes a consistent and harmonious part of a single legislative chart. *In re Belgrade Shores, Inc.*, Me., 359 A.2d 59 (1976); *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791 (1974); *Inhabitants of Town of Amity v. Inhabitants of Town of Orient*, 153 Me. 29, 134 A.2d 365 (1957).

The Commissioner construed the phrase "asserting any claim under this Act" to comprehend the exercise by Delano of "the right not to be forced into employment which is likely to aggravate his injury or which he will be unable to carry out because of his injury." He found "that the demotion of Jon Delano was a direct result of the exercise of his rights not to engage in employment particularly hazardous to his condition resulting from his earlier employment injury, employment which he specifically had been told he would not be required to perform by his supervisor, and a limitation which I find reasonable in the light of all the circumstances."

■ Although our Workers' Compensation Act does not expressly declare that an injured employee has a right not to be forced into employment hazardous to his work-related injury and that he may refuse an offer of such work, even when tendered by his employer, without suffering Commission diminution or termination of his compensation benefits on petition for review by reason of decrease or ending of his work incapacity, such right is implicit in the Act. The employer and employee have parallel corresponding rights and obligations under the Act. It is the duty of the employee to accept available work within his limited ability to perform, i. e. suitable work within the tolerance of his physical condition. The employer has a right to expect this from his employee.

"It is held generally that in the ordinary case an injured employee has the duty of being cooperative, within reason, and of attempting to perform work, when offered, which in the opinion of qualified medical witnesses he can safely do in order that his actual working capacity may, if possible, be ascertained. An injured employee who without good reason does not carry out that duty may have to

suffer the consequences." *Fulford Mfg. Co. v. Lupoli*, 75 R.I. 488, 67 A.2d 846 (1949).[4]

■ On the other hand, the employer has no right to insist that the employee accept work which he cannot, in fact, perform due to his limited physical capacity or which he reasonably apprehends will subject him to serious injury or significant aggravation of his present physical disability. Such reasonable apprehension will justify his refusal to do the work or his decision to quit, if he has undertaken the work. See *Newsom v. Caldwell & McCann*, 51 So.2d 393 (La.App. 1951); *Akins' Case*, 302 Mass. 562, 20 N.E.2d 453 (1939).[5]

■■ The Commissioner in the instant case found that the change of job classification from Equipment Operator II to Laborer I in the case of the petitioner appellee was discrimination by the City appellant in violation of 39 M.R.S.A., § 111. This conclusion is premised entirely on inferences as opposed to direct evidence. In such a case, we are at liberty to review such inferences. *Rugan v. Dole Co.*, Me, 396 A.2d 1003, 1005 (1979); *Sargent v. Raymond F. Sargent, Inc.*, Me., 295 A.2d 35, 42 (1972). After careful study of this record, we are convinced that it is devoid of competent evidence to sustain the reference finding and that under such circumstances the issue becomes one of law and mandates a reversal. *Crosby v. Grandview Nursing Home*, Me., 290 A.2d 375, 379 (1972).

The Commissioner's inference of unlawful discrimination was deducted from the following stated facts. The review of Delano's work capacity was initiated by the Director shortly after Delano had refused the assignment to the "wing man" position on the snow plow in late 1975. The Director suspected Delano of being a malingerer. The initiation of the investigation of petitioner's medical condition was directed at finding a basis for demoting him. The demotion was intended to make petitioner's employment with the City of South Portland less lucrative and thus secure his resignation. The medical reports received from the treating physician were stale. There was hearsay evidence that the Director at some indefinite time had stated that he would get rid of the petitioner entirely if he had more authority.

The record before us and before the Commissioner is very unsatisfactory. There is no evidence in the record respecting the City's qualification requirements in relation to either the job classification of Equipment Operator II or Laborer I. No attempt was made to show that the City in the past had treated other injured municipal employees differently from the action taken in Delano's case. Delano testified that he had seen his doctor three times in late 1975. A letter from the doctor dated October 23, 1975 to the petitioner's attorney states that Delano's condition had reached an end result and that his diagnosis suggested that Delano had suffered a 10% permanent loss of physical function of his left leg. Delano's supervisor, Arvin Erskine, testified that shortly prior to the change of classification in early 1976 the Director had received a letter from the doctor saying that because of his leg injury Delano could not operate heavy equipment. The conclusory testimony to the effect that the Director considered Delano a malingerer came from the petitioner himself as a self-serving statement without factual support or sustentative explanation.

The burden of showing discrimination in violation of 39 M.R.S.A., § 111 was on the petitioner. The evidence stopped short of

4. Accord: *Medina v. The Zia Company*, 88 N.M. 615, 544 P.2d 1180 (N.M.App.1975); *Morrison v. Merrick's Super Market, Inc.*, 300 Minn. 535, 220 N.W.2d 344 (1974); *Akins' Case*, 302 Mass. 562, 20 N.E.2d 453 (1939); *Jordan v. Decorative Co.*, 230 N.Y. 522, 130 N.E. 634 (1921).

5. The right in the employee to refuse hazardous work was recognized as a right the exercise of which is protected against discrimination under the Occupational Safety & Health Act of 1970, 29 U.S.C. §§ 651 et seq., in *Marshall v. Whirlpool Corp.*, 593 F.2d 715 (6th Cir. 1979). See also Judge Wisdom's dissenting opinion in *Marshall v. Daniel Construction Co., Inc.*, 563 F.2d 707 (5th Cir. 1977).

such a demonstration. Given the fact of the change in classification because of the petitioner's admitted physical disability, it does not follow that such action by the City constituted automatically discrimination in violation of section 111. As in the case of discrimination in employment because of age, the petitioner has the burden of proving that his refusal to accept the assignment to the "wing-man" position on the snow plow was a substantial factor motivating his reclassification to a lower-salaried position, since reclassification based on the lack of bona fide qualification for the higher classified occupation would be entirely proper and not discrimination in violation of section 111.

Taking our cue from the holding in *Wells v. Franklin Broadcasting Corporation*, Me., 403 A.2d 771 (1979—the benefit of which the Commissioner did not have), in which case we construed the provisions of the Maine Human Rights Act respecting discrimination in employment because of age (5 M.R.S.A., §§ 4571–72), admittedly a statute of similar societal concern as, and in pari materia with, the injured employee discrimination section of the Workers' Compensation Act (39 M.R.S.A., § 111), we cannot say from the instant record that the Commissioner applied the correct principle of law in reaching his conclusion that there was a violation of section 111. His finding was that

> "the demotion of Jon Delano was a *direct result* of the exercise of his rights not to engage in employment particularly hazardous to his condition resulting from his earlier employment injury, . . . ."

(Emphasis supplied).

■ That Delano's assertion of his right to refuse as non-suitable the assignment to the position of "wing man" on the snow plow may have motivated the City officials to reexamine Delano's work capacity and reclassify him so far as his employment status with the City was concerned and that Delano's demotion may have been a direct result thereof, it does not follow automatically that the alleged retaliatory motive, mixed as it was with employer motivation to reclassify an injured and handicapped employee on the ground of lack of occupational qualification to remain in the more strenuous and higher classified position, was a substantial factor in the employee's demotion. The trier of facts, in an employment discrimination petition under 39 M.R.S.A., § 111, must determine as a fact whether the discharge or demotion of the injured employee was rooted substantially or significantly in the employee's exercise of his rights under the Workers' Compensation Act.[6] Besides the failure of the evidence to support the inferential findings of the Commissioner, there was error in the standard used to determine discriminatory conduct in violation of 39 M.R.S.A., § 111.

■ We should not be taken to acquiesce, however, in the propriety of the open-ended relief under section 111 which the instant Commission decree provides, i. e. to pay to the petitioner the difference between the wage rate of a Laborer I and that of an Equipment Operator II from March 29, 1976, *as long as such wage disparity between the classifications exists*. Should the Commissioner find on re-hearing that the employee's assertion of right under the Workers' Compensation Act was a substantial factor motivating the employee's demotion in job classification, then the Commissioner should determine in Delano's petition for further compensation on account of partial incapacity (which has not been acted upon), whether the employee, because of his physical condition, is unable to perform the duties of Equipment Operator II or is unable to perform those duties in a manner which would not reasonably entail a recurrence of the original injury, and if so, to determine under the Act whether the employee is entitled to further compensation. Notwithstanding employer discrimination in the instant case, should

---

**6.** The parties may possibly protect themselves in avoiding discrimination treatment or charges by entering into trial work agreements as now provided by 39 M.R.S.A., § 100–A (P.L.1977, c. 349), petitioning for transfer pursuant to 39 M.R.S.A., § 66–A, or petitioning for review of incapacity under 39 M.R.S.A., § 100.

that finding be legally reached by the Commissioner on re-hearing, Delano would not be entitled under section 111 to "net wages lost" for any period of time following a Commission decision that he cannot perform the duties of Equipment Operator II or is unable to perform those duties in a manner which would not subject him to aggravation of his present physical condition, nor, if he should be found capable of performing the duties of Equipment Operator II, for any period of time following reinstatement of the employee by the employer to the higher job classification either voluntarily or on Commission order.

Inasmuch as *Wells v. Franklin Broadcasting Corporation* was decided after the case was heard and the Commissioner entered his decree, we conclude that fairness to the parties demands that the case be remanded for further proceedings where supplemental evidence to replenish the instant scanty record may be more fully developed.

The entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Case remanded to the Superior Court with instructions to remand to the Workers' Compensation Commission for further proceedings consistent with this opinion.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses, for this appeal.

POMEROY, DELAHANTY, GODFREY and NICHOLS, JJ., did not sit.