Sandor GARCIA, Plaintiff,

v.

AMERICAN AIRLINES, Defendant.

Civ. No. 92–1097 HL.

United States District Court, D. Puerto Rico.

Feb. 22, 1993.

John E. Mudd, II, Cordero, Miranda & Pinto, San Juan, PR, Juan R. Gonzalez–Munoz, Bayamon, PR, for plaintiff.

Jorge L. Capo–Matos, Pedro A. Delgado–Hernandez, O'Neill & Borges, Amancio Arias–Guardiola, Hato Rey, PR, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

This case is before the court on defendant American Airlines' Motion for Summary Judgment.[1] The facts in this case are relatively simple and essentially undisputed. Plaintiff Sandor Garcia, ("Garcia") is a flight attendant with American Airlines. On January 25, 1991, during a flight from San Juan to Newark, New Jersey, Garcia injured his back while trying to move a beverage cart which had become wedged in the aisle of the cabin due to an allegedly defective wheel. Plaintiff was diagnosed with a moderate size L5–S1 disc rupture and a slight disc bulge at 4–5. Until recently, the Medical Department of American Airlines had determined that, due to his injury, Garcia was unfit for continued duty as a flight attendant.

From 1979 to 1991, including the date of plaintiff's injury, American Airlines provided workers' compensation benefits to its Puerto Rico based flight attendants through Travelers Insurance Company, in the State of Florida. From the sworn statement of Jorge Olascoaga, (Def.Mot.Summ.Judg., Exh. C), it appears that Garcia received $32,000 dollars in medical benefits and treatments and $12,-000 dollars in occupational disability payments pursuant to this policy. Plaintiff also received $9,965.83 dollars from American Airlines pursuant to a collective bargaining agreement with the Association of Professional Flight Attendants ("CBA").

Plaintiff claims that American Airlines had the obligation to insure him with the State Insurance Fund ("State Fund" or "Fund"), pursuant to Puerto Rico's Workmen's Accident Compensation Act, 11 L.P.R.A. § 1 *et seq.* ("Puerto Rico Act" or "Act"), and failed to do so. Plaintiff contends that inasmuch as

---

1. Jurisdiction in this action is based upon diversity of the parties. Plaintiff, Sandor Garcia, is a domiciliary and resident of Puerto Rico. Defendant American Airlines is a Delaware corporation with its principal place of business in Dallas, Texas.

defendant is not an insured employer for the purposes of Puerto Rico's workers' compensation scheme, it remains subject to traditional tort liability. Defendant argues, however, that no Fund coverage obligation exists with respect to Garcia because he spent more than fifty (50) percent of his worktime outside of Puerto Rico. Defendant also argues that notwithstanding the inapplicability of Puerto Rico's workers' compensation scheme, Garcia was provided with insurance coverage pursuant to Florida law, which grants superior benefits to those available under the Fund. In fact, it is uncontested that plaintiff received approximately $44,000 dollars in combined medical and disability payments from Travelers Insurance. Having properly insured Garcia pursuant to Florida's Workers' Compensation Law, F.S.A. § 440.11 ("Florida Act"), American Airlines argues that it is statutorily immune from further liability because coverage under the Florida Act operates as an employee's exclusive remedy for work related injuries. Alternatively, American Airlines argues that plaintiff's state law claims are preempted by the Railway Labor Act, 45 U.S.C. sec. 151 *et seq.*, because they raise minor disputes which must be submitted to an adjustment board for binding arbitration. Because the issue of statutory immunity is dispositive, the Court does not reach the question of preemption.

Initially, Garcia asserted claims for loss of income, physical damages, mental anguish and suffering, lost seniority and special benefits and reinstatement. Plaintiff no longer seeks reinstatement because he recently returned to his duties as a flight attendant. Plaintiff has also withdrawn his claims for lost seniority and special benefits, conceding that these should be submitted to a special adjustment board.

## I. *Summary Judgment Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material, if under applicable substantive law, it may affect the result of the case and a dispute is genuine only if there is conflicting evidence that requires a trial to resolve the discrepancy. *Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 73 (1st Cir.1990). Once the movant has presented probative evidence establishing its entitlement to judgment, the party opposing the motion must set forth specific facts demonstrating that there is a material and genuine issue for trial. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) In determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989).

Applying this standard to the record before us, the Court finds that plaintiff has not met its burden of demonstrating that there is a material and genuine issue for trial. Accordingly, this action is ripe for adjudication by summary judgment.

## II. *Legal Issues*

### 1. Coverage Pursuant to Puerto Rico's Workmen's Accident Compensation Act

█ Puerto Rico's Workmen's Accident Compensation Act, 11 L.P.R.A. § 1 *et seq.,* is applicable to all employers employing one or more workmen or employees covered within the Puerto Rico Act. By express provision of the Workmen's Compensation Act, workers whose employment is of a temporary or casual nature and is not included within the business or occupation of the employer are exempted. 11 L.P.R.A. § 2; *Bustelo v. Industrial Commission,* 85 P.R.R. 559 (1962); 1958 Op.Sec.Jus. No. 13. The test as to what constitutes accidental or casual employment of a worker consists of the following factors: (1) type or nature of work performed; (2) period of duration of employment; (3) cost to employer; and (4) relation of work to business or industry of employer. *Arraiza v. Industrial Commission,* 85 P.R.R. 13 (1962). Thus, a worker who does his work not regularly, but rather sporadically, when the occasion or need arises, is an employee in casual employment for the purposes of the Workmen's Compensation Act. *Romero v. Industrial Commission,* 73 P.R.R. 750 (1952).

There can be no doubt that Garcia was not an accidental, temporary or casual employee. As a flight attendant, he performed a function integral to the business of his employer. Furthermore, the record shows that prior to his accident, he had been employed by American Airlines for an uninterrupted period of five years. Clearly, Garcia was not an exempt employee under § 2 of the Act.

Two maritime cases involving the application of the Workmen's Accident Compensation Act of Puerto Rico have been brought to the Court's attention. In the case, *Alcoa Steamship Company, Inc. v. Velez*, 376 F.2d 521 (1st Cir.1967), relied upon by defendant, the question presented on appeal was whether Puerto Rico's Workmen's Accident Compensation Act was applicable to seamen who had been employed in the continental United States and who were working temporarily in the navigable territorial waters of Puerto Rico as crew-members of foreign[2] owned vessels when they were injured. *Alcoa*, 376 F.2d at 522. The First Circuit held that the Act could not be applied to seamen injured in Puerto Rican waters on an American vessel owned by a corporation of a state other than Puerto Rico where the contract of employment was not entered into in Puerto Rico. *Id.* at 525.[3]

In a maritime case relied upon by plaintiff, *Inter Island Ship. Corp. v. Industrial Comm.*, 89 P.R.R. 635 (1963), the Puerto Rico Supreme Court reached the opposite conclusion concerning the applicability of the Puerto Rico Act. In this case, the injured seaman was a resident of Puerto Rico, working for a corporation organized under the laws of the Commonwealth, with its principal office there as well. Pursuant to his contract

of employment, the sailor worked on board a ship which made trips from the port of San Juan to St. Thomas and St. Croix. The injury occurred in St. Thomas. The Supreme Court of Puerto Rico found that the Act applied to the injury in question.

■ Defendant next directs the Court to two opinions of the Secretary of Justice which purportedly establish an exemption from the application of labor legislation for airline flight attendants who spend more than 50% of their work time outside of the jurisdictional territory of Puerto Rico. (Exhibits A & B Def.Mot.Summ.Judg.) These opinions do, in fact, conclude that certain labor legislation does not apply to flight attendants under these circumstances. However, the specific provisions involved are Section 16 of Article II of the Bill of Rights of the Constitution of Puerto Rico and Law No. 379 of 1948, 29 L.P.R.A. § 271 *et seq.*, the same laws which the Supreme Court of Puerto Rico refused to apply to the contracts of migrant laborers working outside of the Commonwealth in the *Green Giant* case. It seems that neither the maritime cases, nor the opinions of the Secretary of Justice constitute direct legal authority on the issue presently before the Court. In short, the Court is presented with a question of first impression, namely, whether State Insurance Fund coverage obligations extend to flight attendants in Garcia's position who work more than fifty (50) percent of the time outside of Puerto Rico and are insured pursuant to another state workers' compensation act providing greater benefits to those available in Puerto Rico.

Admittedly, since we have uncovered no exemption which seems to cover Garcia di-

**2.** Throughout this Opinion, the word "foreign" refers to states or territories of the United States of America other than the Commonwealth of Puerto Rico.

**3.** In another case relied upon by defendant, *Green Giant v. Tribunal Superior*, 104 D.P.R. 489 (1975), the Supreme Court of Puerto Rico was presented with the question of whether related provisions of the Commonwealth's Constitution and labor legislation, regulating the legal work day and the payment of overtime, should apply to the contracts of migrant agricultural workers who work outside of Puerto Rico. The workers in question entered into employment contracts

with Green Giant Co. to work in Delaware and Maryland. However, the contracts in question were negotiated by the Commonwealth Secretary of Labor; the workers were recruited in Puerto Rico; to the extent that the employer provided for transportation of the workers, the contracts became effective in Puerto Rico; the workers were domiciliaries of Puerto Rico; and the owner maintained a recruiting agent in Puerto Rico. *Green Giant*, 104 D.P.R. at 498. The Supreme Court ruled that the pertinent provisions of Puerto Rico law did not apply to the contracts entered into by these laborers.

rectly, a mechanical reading of the statute would suggest that plaintiff should have been insured through the State Insurance Fund. However, despite its enticing simplicity, this solution does not adequately address other important considerations. For instance, a decision to permit a damage suit against American Airlines on the grounds that Garcia was an uninsured employee under the Act, necessarily carries with it a corollary determination that Florida's exclusive remedy provision will not be applied. Given the undisputed fact that Garcia was insured under and received benefits from the Florida workers' compensation system, treating American Airlines as an uninsured employer for the purposes of the Puerto Rico Act is a fiction which requires some justification in law or policy.

### 2. Does Puerto Rico Have An Interest In Denying Full Faith and Credit to Florida's Exclusive Remedy Provision?

The Supreme Court has held that an award made under workers' compensation statute of a state of the United States will not bar proceeding against the same person under the applicable statute of a sister state unless the first state has declared by statute or court decision that its remedy, if pursued to an award, should be exclusive. *Industrial Comm. of Wisconsin v. McCartin*, 330 U.S. 622, 627–628, 67 S.Ct. 886, 889–90, 91 L.Ed. 1140 (1947). Florida's Workers' Compensation Statute provides for the sole and exclusive remedy for work related injuries. Workers' Compensation Law, Fla.Stat.Ann. §§ 440.01–440.60. The Florida Act limits the compensation that an employee may obtain from the employer for "an injury arising out of and in the course of employment" exclusively to that provided by the Florida Act. *Id.* §§ 440.09, 440.11. In pertinent part, § 440.11 of the Florida Act provides:

> The liability of an employer prescribed in § 440.10 shall be exclusive and in place of all other liability of such employer to any third party-tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law ... on

account of such injury or death.... *Id.* at § 440.11(1)

In *Mullarkey v. Florida Feed Mills, Inc.*, 268 So.2d 363, 366 (Fla.1972), the Florida Supreme Court explained the basic policy underlying the Florida Act:

> It [is] fully within the power of the [Florida] Legislature to provide for a Workmen's Compensation system which supersedes other legislation affecting compensation or relief after death or injury. Distribution of the inevitable costs of industrialism on a rational basis is within the interests of the citizens of [Florida]. General welfare costs are reduced to the extent that compensation keeps the injured and his dependents from the public dole. Protracted litigation is superseded by an expeditious system of recovery.

The Florida courts have held that the exclusive remedy language of § 440.11 of the Florida Act means exactly what it says. See *Employers Insurance of Wausau v. Abernathy*, 442 So.2d 953 (Fla.1983); *Poling v. Petroleum Carrier Corp.*, 194 So.2d 925 (Fla. Dist.Ct.App. [1st Dist.] 1967). The quid pro quo embodied in workers' compensation schemes was explained in *Mullarkey*, 268 So.2d at 366:

> In return for accepting vicarious liability for all work-related injuries regardless of fault, and surrendering his traditional defenses and superior resources for litigation, the employer is allowed to treat compensation as a routine cost of doing business, which can be budgeted for without fear of any substantial adverse tort judgments. Similarly, the employee trades his tort remedies for a system of compensation without contest, thus sparing him the cost, delay and uncertainty of a claim in litigation.

If the Florida Act is applied to the undisputed facts of this case, the conclusion follows that Garcia's tort action against American Airlines for damages resulting from his injury must be barred.

■ The Court notes that while states may enforce the bar of a foreign statute against a suit involving an employer, the Supreme Court has held that there is no

constitutional compulsion to do so. *Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); *See also,* Arthur Larson, *Workers' Compensation Law: Cases, Materials And Text,* (2d ed.) § 90.10 (1992). Thus, a state would not violate the Full Faith and Credit Clause if it decided not to apply the exclusive-remedy provision of a sister state, if that provision differed in substance from its own. In *Wilson v. Faull,* 27 N.J. 105, 141 A.2d 768 (1958), the New Jersey Supreme Court, construing *Carroll,* concluded that because the Constitution imposed no restrictions on a state's decision of whether to apply the exclusive remedy provision of a foreign statute, New Jersey could approach the matter as a straight choice-of-law question, and could rest its decision on considerations of comity and of basic compensation policy as affecting choice of law. *See* Larson, *supra,* at 812. Adopting the basic approach of *Wilson,* the Court turns to consider the policies underpinning workers' accident compensation schemes as these affect the interests of both Florida and Puerto Rico in applying their substantive law to this injury.

■ A state having a legitimate interest in a compensable injury may apply its compensation act to that injury without violating its constitutional duty to give full faith and credit to the compensation statutes of other states with an interest in the injury. *Cardillo v. Liberty Mutual Insurance Company,* 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947), *see also,* Larson, *supra,* at 795–98. Florida's interest in this compensable injury stems from two factors: that defendant paid premiums to insure its workers pursuant to Florida law and that workmen's compensation authorities in Florida approved the payment of benefits to Garcia. The Supreme Court has pointed out that a state where an employee resides has a considerable interest in ensuring adequate compensation for work-related injuries because "it is there that he is expected to return; and it is on his community that the impact of the injury is apt to be most keenly felt." *Crider v. Zurich Insur-*

*ance Co.,* 380 U.S. 39, 41, 85 S.Ct. 769, 770, 13 L.Ed.2d 641 (1965).[4] Thus, Puerto Rico has a distinct interest in ensuring that Garcia receives some form of accident compensation. However, Puerto Rico's interest in assuring that the burden resulting from plaintiff's work-related injury falls upon his employer rather than upon his community has been amply satisfied by the benefits Garcia received through Florida's workers' accident compensation system. *See Gen., Delano v. City of South Portland,* 405 A.2d 222, 225 (Me.1979) (purpose of Workers' Compensation Act to transfer burden of industrial injuries from individual to employer). Because the basic compensation goal of the Puerto Rico Act is satisfied in this case, the issue becomes whether Puerto Rico would have a legitimate interest in denying full faith and credit to the exclusive remedy provision of a sister state's workers' compensation statute, in order to allow claimants in Garcia's situation to pursue further compensation from their employers through tort suits.

In *Jonathan Woodner Co. v. Mather,* 210 F.2d 868, 873 (D.C.Cir.1954), the D.C. Court of Appeals cogently ruled:

Suit by an employee against his employer for damages has almost invariably been denied where some applicable workmen's compensation act existed under which the employee could have claimed compensation. [footnote omitted] Most of these cases involved the situation described above: suit in the place of contracting, the law of the place of injury presenting the bar. And while suit was ordinarily held barred on the ground that the law of the place of injury controls in a tort suit, a few of these cases indicated that, regardless of where the injury occurred, if the employee could claim compensation anywhere a suit for damages would not be allowed. [*See* cases cited at No. 11 in original] ... **But the thrust of these groups of cases, taken together, is apparent: in an employee-employer suit, if some workmen's compensation act purports to bar the**

---

4. See also *Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947) (state has "legitimate interest in providing adequate workmen's compensation measures for its residents"); *Alaska Packers As-*

*sociation v. Industrial Accident Commission,* 294 U.S. 532, 542, 55 S.Ct. 518, 521, 79 L.Ed. 1044 (1935) (danger that an injured employee might become a public charge is a matter of "grave public concern to the state").

**action, that bar will be applied in the forum.** [emphasis ours]

The Court went on to explain the rationale behind these cases:

> The employer has incurred the burden of providing workmen's compensation insurance. The employee has foregone his right to sue the employer for negligence. But both sides have also gained. The employer has gained an immunity from common law suit. The employee has gained a right to relief even where his injury did not arise through the fault of his employer. The courts clearly consider that this system of mutual give and take would be upset if the employee could sue for negligence in another jurisdiction.

*Id.,* 210 F.2d at 874.

The purpose of workers' compensation acts, generally, is to eliminate litigation and transfer the burdens resulting from industrial accidents from the individual to the industry and finally to distribute it on society as a whole.[5] These acts attempt to strike a balance between certainty of compensation and certainty of cost which would be upset were damage suits allowed to proceed under circumstances similar to those present in this case. Although the Puerto Rico and Florida schemes are not identical in every respect, they both contain exclusive remedy provisions evidencing their basic agreement with quid pro quo underlying compensation statutes. Thus, the Court cannot fathom what interest the Commonwealth of Puerto Rico would have in denying full faith and credit to Florida's exclusive remedy provision when its interest in providing adequate compensation has been fully served by the superior benefits already provided under Florida workmen's compensation law. Indeed, in *Alcoa Steamship Company, Inc. v. Velez,* 376 F.2d at 522, the First Circuit pointed out that the Legislature of Puerto Rico has expressed its intention to not use the Workmen's compensation Act "as a vehicle to require the main-

tenance of duplicating compensation insurance by an employer." Similarly, the Secretary of Justice of the Commonwealth has opined that other provisions of Puerto Rico's labor legislation do not apply to flight attendants working less than fifty percent of the time in Puerto Rico. The Court finds, therefore, that where a employee spends over fifty (50) percent of his work time outside of Puerto Rico, and is insured and compensated pursuant to the workers' accident compensation laws of a state which provides benefits superior to those granted in Puerto Rico, the Commonwealth of Puerto Rico would have no interest in barring the operation of the foreign statute's exclusive remedy provision. Accordingly, the Court holds find that American Airlines is entitled to summary judgment as a matter of law because it enjoys statutory immunity from this action pursuant to Florida's workers' accident compensation statute, Sec. 440.11.

**WHEREFORE,** the Court hereby grants American Airline's Motion for Summary Judgment.[6]

**IT IS SO ORDERED.**

---

5. Larson, *Worker's Compensation Law: Cases, Material and Text,* (2d ed.) at 168, citing *Brown v. Palmer Construction Co., Inc.,* 295 A.2d 263 (Me. 1972).

6. Had the Court denied defendant's Motion for Summary Judgment, plaintiff still might have faced dismissal for failure to comply with 11 L.P.R.A. 16, which requires that a complaint seeking damages against an uninsured employer be duly sworn and that a copy be notified to the Administrator of the State Insurance Fund.