SIMPSON'S CASE

Sagadahoc.   Opinion, May 18, 1949.

*Hutchinson, Pierce, Atwood, Scribner,* for petitioner.

*William B. Mahoney, John P. Carey,*
>   for Bath Iron Works Corporation and American
>   Mutual Liability Insurance Company, respond-
>   ents.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

MURCHIE, J.   The propriety of the decision of the Industrial Accident Commission, referred to hereafter as the "Commission," under review, on this appeal of the defendants from a *pro forma* decree of the Superior Court entered pursuant thereto, must be determined by construing the second and closing sentence of the first paragraph of Section 9 of The Workmen's Compensation Act, referred to hereafter as the "Act," as it was effective at the time of the industrial accident to which the proceedings relate, November 21, 1941, R. S., 1930, Chap. 55.   The controlling language is:

>   "The amount of such *services and aids* shall not
>   exceed one hundred dollars unless a longer *period*
>   or a greater sum is allowed by the commission."

The emphasized words (emphasis having been supplied) refer to the "reasonable and proper medical, surgical and hospital services, nursing, medicines and mechanical surgical aids" which the preceding sentence declares an employee shall be entitled to and the "first thirty days after the injury," during which it is there said he shall be so entitled.   The "services and aids" will be so referred to hereafter.   The quoted language has been contained in the Act since the enactment of P. L., 1919, Chap. 238, referred to hereafter as "the 1919 Act," where the services and aids were reenumerated instead of being referred to by a collective phrase.   Section 10.   It is now found in R. S., 1944, Chap. 26, Sec. 9, with immaterial changes.

The employee of the present proceedings, Donald J. Simpson, was injured so severely, while working as a welder in

the employ of Bath Iron Works Corporation, that complete paralysis from the waist down resulted. In the period commencing November 28, 1941, and ending April 8, 1948, compensation was paid to him, or accrued in his favor, aggregating the maximum amount of $6,000, payable to him under the Act, and his employer, or its insurer, paid out in addition thereto a substantial sum in excess of $100 for services and aids to him, the exact amount of which is not disclosed in the record. The settlement receipt given the employer, or its insurer, by the employee, acknowledging that the full sum of $6,000 had been paid to him, is dated June 26, 1948. During the period commencing April 6, 1948 and ending May 24, 1948, the employee paid money, and incurred charges, for services and aids, and for living expenses, all of which he and a nurse, supplying some of them, considered payable by his employer. When they were not paid, petitions were filed by the employee and the nurse, appropriate for having the amount payable therefor determined by the Commission, if its authority to act in connection therewith had not terminated. Awards of $39.69 and $105 were made thereon, covering a part of each claim, the amounts in excess being disallowed as representing "the ordinary expense of living" or as not representing expenses the employee "would not have had if he had had no injury."

The importance of the principle involved cannot be measured by the amount of money in issue. This is manifest when consideration is given to the claims of the parties. The petitioners assert that the Commission has authority to enlarge the period of time during which an employee shall be entitled to services and aids, and the amount to be paid therefor, without limit, except as the latter may be controlled by the words "reasonable and proper" in the first sentence of Section 9 of the Act, references in the sentence carrying the language to be construed to "the nature of the injury or the process of recovery," and an over-all provision in Section 32 that no "petition of any kind, except for review of incapacity, may be filed more than seven years fol-

lowing an accident." The employer asserts that the authority terminates as to each employee when he has been paid the maximum amount of compensation payable to him.

The petitioners ground their claim on the declaration of Section 8 of the Act, that an employee:

"shall be paid compensation and furnished medical and other services;"

the references to "compensation and medical benefits," "compensation or other benefits," "compensation or medical benefits," "compensation and benefits" and "compensation or benefits" in Sections 15, 17, 24 and 27 of the Act, and of P. L., 1929, Chap. 300, referred to hereafter as "the 1929 Act," by contract with the references in the corresponding sections of the 1919 Act, Sections 13, 8, 26 and 28, to "compensation" alone; and particularly a change made in Section 9 of the 1919 Act, with which Section 10 of the 1929 Act compares, whereby the provision that no "compensation except" services and aids should be paid during a waiting period was changed to one that "compensation" should begin at a stated time after incapacity. Special emphasis is laid on the fact that this court in *Melcher's Case*, 125 Me. 426; 134 A. 542, said by way of dictum, on September 28, 1926, that money paid by an employer for services and aids must be considered as compensation because Section 9 of the 1919 Act, then effective, referred to them as such, and that, thereafter, the 1929 Act made it plain that such expenditures do not constitute a part of the maximum compensation payable to an employee.

Authorities are cited, both in the Commission decision and in the petitioners' brief, to support such a construction and they would be adequate for the purpose if authority on the point was needed. It is not. Those authorities, without distinguishing between those cited by the Commission and the petitioners, are *Petraska* v. *National Acme Co. et al.*, 95 Vt. 76; 113 A. 536; *Industrial Commission et al.* v. *Hammond*, 77 Colo. 414; 236 P. 1006; *Cardillo et al.* v. *Liberty*

*Mutual Insurance Co.,* 69 App. D. C. 330; 101 F. (2nd) 254; *Morris* v. *Laughlin Chevrolet Co.* et al., 217 N. C. 428; 8 S. E. (2nd) 484; 128 A. L. R. 136, and an annotation following the report of the last of these cases in A. L. R.

If there was any point in deciding whether the money spent by the employer, or its insurer, for services and aids to Donald J. Simpson on account of the injuries he suffered on November 21, 1941 should be counted as a part of the $6,000 in compensation payable to him under the Act, the decision that it should not would have to be made without reference to any of the authorities aforesaid. The intention of the Act in that regard is made crystal clear by its language. On the actual issue, i. e. whether the authority of the Commission to extend services and aids beyond the period of 30 days, and the amount of $100, terminated as and when he had received, or became entitled to, the maximum amount of compensation payable to him, those authorities have no bearing.

On that issue the position taken by the employer has support in the decision of the Massachusetts Court in *George A. Meuse's Case,* 270 Mass. 29; 169 N. E. 517, 518. That the Massachusetts law in the sections corresponding to Sections 8, 15, 17, 24 and 27 of our Act makes no reference to "medical benefits," "other benefits" or "benefits," but to "compensation" alone, supplies no warrant for construing our Act, as the petitioners do, as intended to provide "two distinct types of benefits" for an employee, each having no relation to the other. The Act was intended primarily to provide employees with compensation for incapacity. Services and aids are incidental to such compensation, except so far as they are available before the beginning of the period during which compensation is payable. The Massachusetts Court, referring to the phrase "for a longer period" in the Massachusetts Act, said, in *Meuse's Case, supra,* that it:

> "means a period longer than two weeks; a period which is to continue for such a part of the compen-

sation period as the * * Board * * should in its discretion determine,"

and later:

"But the jurisdiction of the board was entirely at an end * * * when the compensation period was passed."

A further statement of the Massachusetts Court in that case is eminently appropriate in the present one, i. e. that it:

"is a hard case; * * * no amount of money * * * will compensate the employee; but that affords no justification for reading into the statute a meaning * it does not contain."

The function of the Commission, and of this court in a case brought to it by appeal from a decision of the Commission, is to construe the Act without either adding to or subtracting from its language. The mandate of Section 29 of the Act for liberal construction of its provisions (now R. S., 1944, Chap. 26, Sec. 30) provides no warrant for administrative or judicial creation of rights or liabilities under the guise of construction. The measure of liberality is for legislative and not judicial determination. The enactment of the first Workmen's Compensation Act in this state, P. L., 1915, Chap. 295, established two measures for limiting the time during which its benefits should be available to employees. A time measure was fixed at 500 weeks, and a money measure at $3,000. Sec. 14. The money measure was increased to $4,200 in the 1919 Act, Sec. 14, to $6,000 in the 1929 Act, Sec. 11, and stands at $7,500 since the enactment of P. L., 1943, Chap. 328. The time measure has remained constant. The petitioners do not claim that the language to be construed, when written into the Act by Section 10 of the 1919 Act, evidenced such a legislative intention, or could have been construed, as they now claim. Their assertion is that the changes made in other sections of the Act by the 1929 Act, coupling compensation with

services and aids by a variety of wordings, show the intention they assert. The particular sections and the pertinent words are quoted *supra*.

Collectively the changes made by them cannot be said to show any intention with reference to services and aids except to eliminate the possibility that money paid for them should be considered a part of the maximum amount of compensation payable to an employee. They did not enlarge the overall controls except so far as time should be measured by money when $4,200, instead of $3,000, was paid out in less than 500 weeks; nor did the change made in Section 10 of the 1919 Act, in rewriting it as Section 9 of the 1929 Act, providing that an employee should be "entitled" to services and aids where the earlier recital had been that an employer should "promptly furnish" them. The provision of Section 8, quoted *supra*, is followed by the words "as hereinafter provided," indicating that the measures of the compensation and the services, by which term services and aids are there designated, are to be found in subsequent sections. Those measures are the ones stated in terms of time and money. Since the enactment of the 1929 Act, as before, services and aids are available to an employee before and during the time he is entitled to draw compensation but not thereafter. At the expiration of the maximum period during which he is entitled to draw it, or upon the payment, or accrual, of the maximum amount payable to him, without reference to services and aids, the Commission's authority in connection with services and aids terminates, except so far as it may be called upon to determine allowances for those furnished during the compensation period. The Commission had no authority to make the awards carried in the decision under review.

*Appeal sustained.*