Dale A. FOLSOM

v.

**NEW ENGLAND TELEPHONE &
TELEGRAPH COMPANY.**

Supreme Judicial Court of Maine.

Argued Sept. 19, 1991.
Decided March 30, 1992.

Jeffrey L. Cohen (orally) McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for employee.

John J. Aromando (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for employer.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

Dale Folsom appeals from a decision of the Appellate Division of the Workers' Compensation Commission, reversing a Commission decision that denied New England Telephone's (NET) second petition for review of incapacity. Folsom contends that the Appellate Division erred in granting NET's petition because NET failed to introduce comparative medical evidence showing a change in his earning capacity. We affirm the Appellate Division.

Folsom injured his back while working as a lineman for NET. He was compensated for total incapacity from the time of the injury until March of 1977, when he took a clerical job with NET. In 1978, Folsom's injury forced him to leave his clerical position with NET and NET agreed to compensate him for total incapacity. In July of 1979, NET filed a petition for review. The Commission denied the petition, finding that although Folsom's disability had decreased, total compensation should continue in light of his good-faith work search. Folsom appealed the Commission's finding as to the decrease in his degree of disability. We held that because no medical evidence had been presented, there was insufficient evidence in the record to support the Commission's finding, vacated the judgment and remanded the matter to the Commission for a redetermination of its compensation award. *Folsom v. New England Telephone & Telegraph Co.*, 432 A.2d 1244 (Me.1981) (*Folsom* I).

In 1986, NET filed a second petition for review. The Commission found that Folsom had developed a successful auction business and obtained a real estate license. The Commission granted NET's petition for review because it found Folsom had regained his pre-injury earning capacity. Upon Folsom's motion for further findings of fact and conclusions of law, the Commission decided it had erred as a matter of law. The Commission decided that the second petition for review could not be granted because NET had failed to introduce comparative medical evidence, and that such evidence, as a matter of law, was necessary to prove a change in Folsom's earning capacity. Nonetheless, the Commission reaffirmed its finding that Folsom's earning capacity had increased since NET's first petition for review.

NET appealed the decree. The Appellate Division reversed the holding of the Commission and ordered NET's petition granted. Relying on the Commission's original findings, the Appellate Division found that Folsom's earning capacity had increased since the time of the first petition. The Appellate Division concluded that the economic proof offered by NET was sufficient as a matter of law to prove a change in earning capacity and no comparative medical evidence was required in the circumstances. Folsom petitioned for appellate review and his petition was granted.

I

■ Folsom contends that because NET has already sought and obtained a determination under § 100, its petition must be brought under § 100(2)(B). His argument is consistent with the position taken by the Appellate Division in the two cases in which it addressed this issue, *Cormier v. Borderview Nursing Home*, Dec. No. 88–162 (Me.App.Div., Aug. 31, 1988), and *Whitt v. Coastal Steel Erectors*, Dec. No. 83–71 (Me.App.Div., Oct. 4, 1983), and we agree with this interpretation of the statute.

II

Folsom contends that the language of § 100(2)(B) is clear and unambiguous. The version of the statute applicable to these proceedings provides, in pertinent part that:

A. On the first petition for review brought by a party to an action, the commissioner shall determine appropriate relief, if any, under this section by determining the employee's present degree of incapacity. For purposes of a first petition brought under this section, evidence of the employee's medical condition at the time of an earlier determination or approved agreement is relevant only if it tends to prove the present degree of incapacity.

B. Once a party has sought and obtained a determination under this section, it is the burden of that party in all proceedings on his subsequent petition under this section to prove by comparative medical evidence that the employee's earning capacity attributable to the work-related injury has changed since that determination.

39 M.R.S.A. § 100(2)(A), (B) (1989 & Supp. 1990). These provisions were enacted in 1981. Before 1981, the comparative medical evidence requirement was not part of the statute but a judicially created doctrine that put the burden of proving a change in the employee's disability on the moving party under § 100. *Dillingham v. Andover Wood Products, Inc.*, 483 A.2d 1232, 1235 (Me.1984).[1]

■ Folsom maintains that the plain language of the statute provides that a change in earning capacity must be proved by comparative medical evidence in any subsequent petition for review. Comparative medical evidence is "expert medical testimony which bear[s] directly upon the comparison between [the employee's] former and his present disability." *Van Horn v. Hillcrest Foods, Inc.*, 392 A.2d 52, 54 (Me.1978) (quoting, 3 Larson, *Workmen's Compensation Law* ch. XV, § 81, p. 470 (1976)). Folsom argues that the Appellate Division erred in granting NET's petition because NET failed to introduce any expert medical testimony.

The Appellate Division concluded that the 1981 amendment had incorporated the doctrine into the statute. It reasoned that

because the requirement was a judicially created doctrine and had become a legal term of art, when the legislature adopted the doctrine, it also adopted several judicially created exceptions to it. The Appellate Division went on to find that this case falls within the scope of one of those exceptions. We agree that the exceptions remain viable, but for a different reason.

■ When the legislature enacted § 100(2)(B), it did not adopt the comparative medical evidence doctrine, it merely created an additional exception to the doctrine, intended to complement the existing judicially crafted exceptions. We have previously noted that "[a]t most, the 1981 revision of § 100 affects the burden of proving a change in earning capacity on a party's first petition for review." *Dillingham*, 483 A.2d at 1235. In other words, the '81 amendment did not eliminate the judicially crafted exceptions to the doctrine or incorporate them into the statute. It created an additional exception, making the doctrine inapplicable on first petitions for review.

■ One of these judicially crafted exceptions, set forth in *Haney v. Lane Construction Corp.*, provides that where the original agreement is premised partially on a physical disability and partially on a lack of economic opportunity, the moving party need not offer comparative medical evidence when attempting to prove change in economic opportunity and not a change in the degree of physical disability. *Haney v. Lane Construction Corp.*, 422 A.2d 1292, 1295-96 (Me.1980). In *Haney*, we were forced to recognize that comparative medical evidence could not logically be required where a party was seeking to establish a change in work capacity based on a change in economic opportunity.

■ The present case represents a logical extension of our decision in *Haney*. At any given point in time, work capacity may appear to be controlled by physical ability, but it is actually a dynamic and changing measure. When viewed over the lifetime of an injured worker, it is evident that

1. In 1987, the statute was amended, eliminating the comparative medical evidence requirement.

The amendment, by its own terms, applies only prospectively. 39 M.R.S.A. § 100.

work capacity is determined not only by physical ability but also by a number of other factors, including changes in the skills and aptitude of the worker and economic and technological changes in the work place. An injured worker, unable to engage in strenuous physical employment, may, over time, develop other skills necessary for employment in a less physically-demanding occupation. On the other hand, an injured worker who, despite a physical disability, retains work capacity because of the availability of employment opportunities within the worker's post-injury capacity, can see those opportunities eclipsed by subsequent economic developments. In each case, review of work capacity should be based on comparative evidence of change in the actual factors affecting work capacity.

The doctrine was formulated to address our concerns for *res judicata*. While perhaps initially appropriate, the term "comparative medical evidence doctrine" has become a misnomer. The doctrine was so identified primarily because the cases that gave impetus to its creation involved medical evidence. The focus of the doctrine has always been to prevent the use of one set of facts to reach different conclusions. Requiring the presentation of comparative evidence establishing a change in a party's circumstances, physical or economic, adequately addresses those concerns. Rigid insistence on the presentation of comparative medical evidence does nothing to further the purpose of the doctrine and leads to absurd results. Such an interpretation forces us to declare that Folsom remains one hundred percent physically disabled and completely unable to work when the facts clearly establish that he is gainfully employed.

### III

■ After the Commission initially found an increase in earning capacity, Folsom requested further findings of fact and conclusions of law. The Commission concluded that it had made a legal error and reversed itself. The Commission did make specific findings pertaining to the compara-

tive medical evidence requirement, but did not issue any specific findings pertaining to its determination that Folsom had regained his pre-injury earning capacity. Folsom did not request further findings on the part of the Commission.

NET appealed the Commission's decision. The Appellate Division reversed the Commission on the legal issue alone, and after reviewing the record and the Commission's original findings of fact, noted that the Commission had properly found full recovery of earning capacity. After a careful review of the record, we find that the Appellate Division did not err and that it correctly determined that a remand for further findings of fact was unnecessary.

The entry is:

Judgment affirmed.

WATHEN, C.J., concurs.

ROBERTS and CLIFFORD, JJ., concur in separate opinion.

GLASSMAN, J., dissents.

ROBERTS, Justice, with whom CLIFFORD, Justice, joins, concurring.

I concur in affirming the decision of the Appellate Division in this case. I write separately only because I do not agree with the conceptual basis of the Court's opinion. Specifically, Folsom's appeal does not involve an exception to the so-called "comparative medical evidence rule."

Before the 1981 amendments, and before our decision in *Haney v. Lane Construction Corp.*, 422 A.2d 1292 (Me.1980), we had recognized the dual nature of earning incapacity. *See e.g. Dailey v. Pinecap Inc.*, 321 A.2d 492 (Me.1974); *Connelly's Case*, 122 Me. 289, 119 A. 664 (1923). The two appeals of Dale Folsom are examples of each aspect of earning incapacity. In *Folsom v. New England Tel. and Tel. Co.*, 432 A.2d 1244 (Me.1981), Folsom challenged only a *finding* of diminished medical disability. Despite the fact that the Commissioner had denied NET's petition for review, we vacated the decision because of the absence of comparative medical evidence to show that Folsom's medical condi-

tion had improved. We referred to comparative *medical* evidence because it was Folsom's *medical* condition that was at issue. In contrast, Folsom's present appeal concerns the economic aspect of earning incapacity, i.e. the availability of work within Folsom's physical limitations. *See Dailey,* 321 A.2d at 495.

The notion that a petition for review, whether initiated by an employee or an employer, carries with it the burden of proving by comparative evidence a change in earning incapacity is not a novel doctrine. It is based on the common sense proposition of avoiding relitigation of matters already settled. *Haney,* 422 A.2d at 1294. Unfortunately, because change in medical condition is most frequently at issue, the requirement of comparative evidence became commonly called the "comparative medical evidence rule." We first used the phrase "comparative medical evidence" in *Van Horn v. Hillcrest Foods, Inc.,* 392 A.2d 52 (Me.1978). In that case the change of circumstances at issue involved only Van Horn's medical condition. Prior to 1981, we referred to comparative medical evidence only regarding an employee's medical condition. *See Haney,* 422 A.2d at 1295; *Hamilton v. Dexter Shoe,* 402 A.2d 854, 856 (Me.1979); *Van Horn,* 392 A.2d at 54.

Folsom does not challenge the sufficiency of comparative evidence concerning his improved economic circumstances. Instead, he relies on the 1981 amendments to argue that any petition for review after NET's first petition must be based solely on comparative *medical* evidence. That is undoubtedly the plain language of subsection 100(2)(B), but it is not the Legislature's meaning.

In P.L.1981 ch. 514, § 4 (eff. September 18, 1981), the Legislature sought to encourage early agreement on degree of incapacity by relaxation of the comparative evidence requirement. Pursuant to subsection 100(2)(A), the first petition for review would involve only a determination of the employee's then degree of incapacity. In subsection 100(2)(B) the Legislature intended to restore to the petitioner on any subsequent petition the burden of establishing a change of circumstances. Prior to the 1981 amendments, that burden could be met by evidence showing a change in medical condition or a change in availability of work commensurate with the employee's physical limitation. Permitting subsequent petitions to be based only on a change in medical condition would lead to absurd results, contrary to the purpose of the Legislature.

**GLASSMAN, Justice, dissenting.**

I must respectfully dissent. In my opinion the court ignores the clear and unambiguous language of section 100(2)(B).

At the time that New England Telephone Co. filed its first petition for review, in July 1979, section 100 provided in pertinent part:

> While compensation is being paid or ... being provided under any agreement, award or decree, the incapacity of the injured employee due to the injury ... may from time to time be reviewed by a single commissioner upon the petition of either party upon the grounds that such incapacity has subsequently increased, diminished or ended.... Pending a hearing and final decision upon such review ... the payment of compensation shall not be decreased or suspended.... Upon the request of the petitioner, the commission shall order the employee to submit to examination by an impartial physician or surgeon designated by the commission for the geographical area where the employee resides. If the employee refuses to submit to such examination, or if after examination such physician or surgeon certifies to the commission that in his opinion the employee is able to resume work, the payment of compensation may be decreased or suspended pending final decision on the petition for review.
>
> Upon such review the commissioner may increase, diminish or discontinue such compensation ... in accordance with the facts, as the justice of the case may require.

In *Haney v. Lane Const. Corp.,* 422 A.2d 1292 (Me.1980), we reviewed the deci-

sion of a Commissioner on an employer's first petition for review. The employee had been receiving compensation for total incapacity based on an agreement entered into between the parties and approved by the Commission. The agreement did not reflect its underlying basis. We stated that there can be two bases supporting an agreement to pay compensation for total incapacity: (1) a total physical disability of the worker caused by the work-related injury, in which event the employer was required to produce comparative medical evidence showing improvement in the employee's physical condition, or (2) a partial physical disability coupled with the unavailability of work for a worker so disabled, in which event the employer could meet his burden by proving that the employee's incapacity for remunerative work had diminished as a result of improvement in the availability of such work to him.

In *Curtis v. Bridge Const. Corp.*, 428 A.2d 62 (Me.1981), we again reviewed a Commissioner's decision on an employer's first petition for review where an employer had been paying the employee compensation for total incapacity based on an approved agreement that did not state its basis. We explained that if the approved agreement for payment did not disclose the employee's physical condition at the time the agreement was made, the employer seeking the reduction of the employee's compensation could only meet his burden of proof by competent and adequate evidence of the employee's physical disability at the time of the execution of the agreement in comparison to the employee's present physical disability. We distinguished the case, however, where, as in *Curtis*, the employer had not offered this comparison evidence but had established by competent and adequate medical evidence that the employee's physical disability attributable to his work injury had ended. "In this latter context the rationale for the requirement of comparison evidence disappears; under the Act, a worker who suffers from no physical disability attributable to the original incident, since he no longer has a disabling 'injury', is simply not enti-

tled to payment of compensation." *Id.* at 64.

*Folsom v. New England Telephone & Telegraph Co.*, 432 A.2d 1244 (Me.1981), followed our decisions in *Haney* and *Curtis*. The record discloses the following pertinent facts: On January 18, 1978 Folsom had stopped work because the clerical position was beyond his post-injury physical capacity. NET filed its first petition for review in July 1979 based on an approved agreement between NET and Folsom, dated January 31, 1978, providing total disability compensation for Folsom on the basis of "Low back strain—Displaced IV Disc." Despite the fact that the only evidence as to Folsom's physical condition was basically unchanged, the Commissioner found that Folsom's medical disability had diminished since the 1978 agreement and his capacity for gainful employment as of the date of the hearing was 25% of his pre-injury capacity. The Commission also found that total compensation should continue in light of Folsom's unsuccessful good faith work search.

Folsom appealed, contending that the Commission's finding as to Folsom's diminution of physical disability was unsupported by any comparative medical evidence that would support a determination of diminution and should not be allowed to stand. Contrary to the contention of NET that Folsom's appeal did not present a justiciable issue because he was not prejudiced by the Commission's decision that Folsom had a continuing right to compensation for total work incapacity, we stated:

> Regardless of what rule would be appropriate in other civil litigation, the nature of the continuing jurisdiction of the Workers' Compensation Commission over these proceedings may elevate findings of fact to the level of an order that operates 'prejudicially and directly' upon Folsom's rights.... We have repeatedly emphasized the importance of the record of prior proceedings when faced with questions of diminution in work incapacity.... Subsequent proceedings between Folsom and his employer will be influenced by the factual findings concerning physical disability. Therefore, Folsom is

a party aggrieved even though his complaint with the decision below is based solely upon its factual basis rather than its result.

... [W]e do not find in the record the requisite evidence to support any finding of a *change* or *diminution* of his physical disability. This is so because, as we have said repeatedly, we cannot permit different conclusions as to the extent of disability to be based upon the same medical condition.

*Id.* at 1245, 1246 (emphasis in original). We vacated the Commission's decision on the ground that NET had failed to meet its requisite burden of proof and remanded the case to the Commission for further proceedings. On remand the Commission found "that there was not requisite evidence to support any finding of a change or diminution of Dale A. Folsom's physical ability since January 1978 when, by Agreement, he was deemed to be totally incapacitated from gainful employment," and denied NET's petition for review. No appeal was taken from that decision.

Following these decisions, the Legislature in 1981, by P.L.1981, ch. 514, § 4, effective September 18, 1981, repealed and replaced section 100. At the same time, and by the same chapter, the Legislature created the Appellate Division and provided for review of its decisions by this court. Section 100, subsection 2, of the 1981 statute, designated as "Standard for review," clearly differentiated between the first petition and any subsequent petitions for review as to the role comparative medical evidence would have in proving the present degree of incapacity of the employee. 39 M.R.S.A. § 100(2)(A) and (B). We subsequently recognized the Legislature's intent to limit the changes in section 100 to an easing of the evidentiary burden of the first time petitioner for review. *See Dillingham v. Andover Wood Products, Inc.,* 483 A.2d 1232, 1235 (Me.1984) ("At most, the 1981 revision of § 100 affects the burden of proving a change in earning incapacity on a party's first petition for review.").

In the instant case, because NET has already sought and obtained a determination under section 100, NET's present petition must be governed by section 100(2)(B). Folsom contends that the plain language of subsection (2)(B) requires that a change in his earning incapacity attributable to his work-related injury must be proved by comparative medical evidence. He argues that the Appellate Division erred in granting NET's petition because by its failure to offer such evidence NET did not meet its requisite burden of proof. He points to the approved agreement between the parties dated January 31, 1978 providing that "Low back strain—Displaced IV Disc" was the sole basis for Folsom's total disability compensation and the decision of the Commission on NET's first petition for review. The court agrees with the contention of NET that, notwithstanding the clear language of subsection (2)(B), those judicially crafted exceptions to the comparative medical requirement applicable to a first petition for review are applicable to all subsequent petitions.

We have repeatedly stated that the rights of a party under the Workers' Compensation Act are purely statutory, *see, e.g., LaVoie v. International Paper Co.,* 403 A.2d 1186, 1191 (Me.1979), and that when the language of the statute is clear and unambiguous and the statute itself does not disclose a contrary intent, we will give the statute its plain meaning, *see, e.g., Stanley v. Tilcon Maine, Inc.,* 541 A.2d 951, 952 (Me.1988). *See also Simpson's Case,* 144 Me. 162, 167, 66 A.2d 417, 419 (1949) ("The function of the Commission, and of this court in a case brought to it by appeal from a decision of the Commission, is to construe the Act without either adding to or subtracting from its language."). Comparative medical evidence is expert medical testimony "which would permit comparison of [the employee's] physical condition on the date of the prior decree to [the employee's] physical condition at the time of the hearing." *Cote v. Osteopathic Hosp. of Maine, Inc.,* 447 A.2d 75, 76 (Me. 1982). This precise definition of the term "comparative medical evidence" has been understood and accepted for decades in determining the rights of a party under the Act. "In the absence of comparative

[medical] evidence, the degree of incapacity attributable to the physical injury remains fixed by force of the prior award...." *Id.*

In the instant case, it is uncontradicted that the compensation for Folsom's total incapacity in the approved agreement between the parties and the Commission's decision on NET's first petition for review are based on a total incapacity attributable solely to Folsom's physical injury and that his medical condition remains unchanged. I find nothing in the legislative history of the amendment to section 100 or in the plain unambiguous language of section 100(2)(B) indicating the Legislature intended that on a second petition for review there be any other manner of proof of diminution or increase of an employee's earning capacity other than by comparative medical evidence. Nor do I agree with the court that to give the unambiguous language of section 100(2)(B) its plain meaning leads to absurd results. The Appellate Division and the court must assume that "the equities" of the result of the statute, even though providing an apparent "windfall" to Folsom and other employees in a like situation, have been considered and weighed by the Legislature.

Accordingly, I would vacate the decision of the Appellate Division and affirm the decision of the Commissioner that because NET failed to meet its burden of proof its petition for review must be denied.