2000 ME 6

**Richard McINTYRE**

v.

**GREAT NORTHERN PAPER, INC.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1999.
Decided Jan. 12, 2000.

---

Wayne W. Whitney (orally), McTeague, Higbee, MacAdam, Case, Cohen & Whitney, P.A., Topsham, for employee.

John A. Woodcock Jr. (orally), Weatherbee, Woodcock, Burlock & Woodcock, P.A., Bangor, for employer.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The employee, Richard McIntyre, appeals from a 1998 decision of the Workers' Compensation Board denying, in part, his petition for review of incapacity, and ordering the continuation of the payment to him of 25% partial incapacity benefits. In a 1992 decree, the former Workers' Compensation Commission awarded 25% partial incapacity benefits to McIntyre, based, in part, on McIntyre's failure to conduct a good faith work search, and to show that work was unavailable to him as a result of his injury. In the 1998 decree, from which this appeal is taken, the Board concluded that, although McIntyre has shown that he has received vocational training, conducted a good faith work search, and has obtained employment since the previous decree, these showings did not constitute a "change of circumstances" sufficient to support an award of benefits reflecting a higher partial incapacity. We agree with McIntyre that the findings made by the Board, based on evidence he presented to the Board, constitute a change of circumstances entitling McIntyre to be considered for benefits reflecting an incapacity in excess of 25%. Accordingly, we vacate the Board's decision.

[¶ 2] McIntyre suffered work-related injuries to his left ankle in August of 1989, while employed by Great Northern Paper, Inc. He terminated employment with Great Northern in 1991 and Great Northern filed a petition for review shortly thereafter seeking to reduce benefits from total incapacity to partial incapacity. In 1992, the former Commission concluded that McIntyre had not met his burden of production to show entitlement to total or 100% partial benefits, either by performing a good faith work search or by providing labor market evidence, and, accordingly, reduced his benefits to reflect 25% partial incapacity.

[¶ 3] In 1994 McIntyre attended Eastern Maine Technical College and received a two year degree in business management. In late 1995 McIntyre began suffering increased ankle pain, and underwent surgery in July of 1996. McIntyre was released to work in January of 1997, and began looking for light-duty work that month. McIntyre's physical condition improved until he eventually returned to his pre-surgery level of incapacity on May 1, 1997. In July of 1997 McIntyre obtained part-time work as a grocery inventory auditor and as a direct care worker for mentally and physically handicapped adults for Common Sense Housing. In August of

1997, McIntyre obtained part-time seasonal employment as a highway flagger for five weeks. Since January of 1998, McIntyre has been employed full-time through Common Sense Housing, at a rate of $6.00 an hour, with occasional overtime. The record reflects that McIntyre has continued to look for higher paying employment throughout this period.

[¶ 4] McIntyre filed a petition for review of incapacity seeking increased benefits from July of 1996. The Board granted the petition in part, awarding total incapacity benefits for the period of time that McIntyre was incapacitated as a result of his surgery, and 50% partial incapacity for the period after McIntyre began his work search in January of 1997 until he had recovered his pre-surgery level of capacity in July of 1997. The Board concluded, however, that McIntyre had not shown a change of circumstances since the 1992 decree to justify an increase of benefits after he returned to his pre-surgery level of incapacity, and ordered continuation of 25% partial incapacity benefits The Board stated:

> Unlike the first time in front of the Commission, on this occasion the *employee has done a fairly impressive work search and if the Board were free to do so, it would hold that the employee has a 60% fixed rate incapacity level.* However, the Board is not free to do that. The burden is on the employee to show that there has been a change in circumstances since the [Commission] last addressed the issue [of] his level of incapacity. Although this is the employee's first **PETITION FOR REVIEW OF INCAPACITY,** he still has to show that there has been a change since the last time the [Commission] has considered the matter, this only makes common sense. What he does not have to show is comparative medical evidence of a change of circumstances. *Folsom v. New England [Tel. & Tel. Co.],* 606 A.2d 1035 (Me.1992); *See also Hafford v. Kelly,* 421 A.2d 51 (Me.1980).

> *In this particular case the employee [ ] has shown a change of circumstances for the better since the 1992 decree. He has become more educated with a higher level of training and the economic situation in Penobscot County and in particular, Bangor, [where] he has looked for work is better now than it was in 1992.* With the exception of the period of time the employee was recovering from his surgery, for which he is entitled to total and partial incapacity benefits, there is no change of circumstances that would justify the Board increasing the employee's level of incapacity. This is not to say that this Hearing Officer would have found the same level of incapacity had he been deciding the case back in 1992. However, as pointed out by counsel for the employer, that has become *res judicata. See Cesare v. Great Northern Paper [Co.],* [1997 ME 170], 697 A.2d 1235 [1325 ]. *While it is true that the employee made a more diligent work search in 1997, that is not the change of circumstances envisioned by the law ....* (Emphasis added.)

We granted McIntyre's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1998).

■ [¶ 5] The "changed circumstances" rule is related to the doctrine of res judicata. *See Folsom v. New England Tel. & Tel. Co.,* 606 A.2d 1035, 1038 (Me. 1992). The purpose of the rule is "to prevent the use of one set of facts to reach different conclusions." *Id.* Consequently, in order to prevail on a subsequent petition for review, the party petitioning must show a change of circumstances from the previous decree sufficient to justify a different result. *Id.*

■ [¶ 6] In order to determine whether "changed circumstances" exist, it is necessary to determine the basis on which the previous award has been made. *See Folsom,* 606 A.2d at 1037–38; *Haney v. Lane Constr. Corp.,* 422 A.2d 1292, 1295–96 (Me.1980). A partially incapacitated employee may be entitled to 100%

partial incapacity benefits based on the unavailability of work within the employee's restrictions. We have stated what the burdens of proof are:

> On an employer's petition for review, the employer bears the burden of proof to establish the employee's earning capacity; however, when the employer shows that the employee has regained partial work-capacity, the employee bears a burden of production to show that work is unavailable to him or her as a result of the injury. *Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980). If the employee meets the burden of production, the employer's "never shifting" burden of proof may require it to show that it is more probable than not that there is available work within the employee's physical ability. *Id.* at 1009–10; *Poitras v. R.E. Glidden Body Shop*, 430 A.2d 1113, 1118 (Me.1981).

*Dumond v. Aroostook Van Lines*, 670 A.2d 939, 941–42 (Me.1996) (footnote omitted).

[¶ 7] The former Commission's finding of 25% partial incapacity in the previous decree was based, in substantial part, on the employee's lack of a good faith work search and failure to show the unavailability of employment. In this case, McIntyre has presented evidence relevant to his earning capacity in the current labor market. His subsequent vocational training, good faith work search, and his attainment of post-injury employment taken together constitutes a significant change in circumstances relating to the extent of his incapacity. Indeed, based on this new evidence, the Board found McIntyre's level of incapacity to be 60%. Moreover, this is not a case where the employee merely undertook the necessary work search, or endeavored to gather information about the availability of employment, after a negative finding. McIntyre has substantially changed his circumstances by seeking out and completing vocational education, by engaging in a search for employment, and by committing himself to that new employment. If the Board's interpretation stood, and employees were forever barred from obtaining an increase in benefits after making earnest efforts to reenter the work force and actually obtaining employment as McIntyre has done here, the purpose of the Act to encourage employees to look for post-injury employment would not be served.

[¶ 8] The Board erred in finding that McIntyre had not shown sufficient changed circumstances since the 1992 decree. For the period following his attainment of employment in July of 1997, McIntyre's post-injury earnings constitute prima facia evidence of his earning capacity. *See Fecteau v. Rich Vale Constr., Inc.*, 349 A.2d 162, 166 (Me.1975). Although the Board found a 50% partial incapacity for the period after January 1997 but prior to his attainment of employment in July of 1997, the Board's finding that McIntyre "has done a fairly impressive work search," suggests that the Board may have failed to consider McIntyre's entitlement to total or 100% partial benefits during this period. *See Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1009 (Me.1980). Accordingly, we vacate the decision and remand to the Board for a determination of incapacity from January of 1997 to the present and continuing.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.