MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 160
Docket:        WCB-16-204
Argued:        April 11, 2017
Decided:       July 20, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

MICHAEL F. BAILEY

v.

CITY OF LEWISTON et al.

JABAR, J.

[¶1]  The City of Lewiston and its insurer, Cannon Cochran Management Services (referred to collectively as the City), appeal from a decree of the Workers' Compensation Board Appellate Division vacating the hearing officer's (*Goodnough*, HO)[1] grant of the City's petition to determine the extent of Michael F. Bailey's permanent impairment.  *See* 39-A M.R.S. § 322 (2016). We affirm the Appellate Division's decision.

I.  BACKGROUND

[¶2]   The following facts, which are derived from a 2014 Workers' Compensation Board decree granting the City's petition to determine the

---

   [1] Pursuant to P.L. 2015, ch. 297 (effective Oct. 15, 2015), Workers' Compensation Board hearing officers licensed to practice law are now designated as administrative law judges (ALJ).  All of the decisions made by now-ALJ Goodnough however, were made before this change.

2

extent of Bailey's permanent impairment, are supported by the record. *See* 39-A M.R.S. §§ 318, 322(3) (2016). Bailey, who at the time of the 2014 decree was sixty-five-years old, began working as a City of Lewiston firefighter in 1975. On October 21, 2001, he suffered a respiratory work injury and was subsequently diagnosed with reactive airways deficiency syndrome (RADS). By way of a Workers' Compensation Board decree, Bailey began to receive partial incapacity benefits stemming from that injury in 2004. In 2007, the City sought review of Bailey's award of benefits and Bailey sought a determination of the extent of his permanent impairment. The hearing officer (*Goodnough, HO*) denied the City's petition, but found that Bailey had reached maximum medical improvement (MMI) and that he had sustained an injury that resulted in a permanent impairment level of 32%. This determination was based on the results of an independent medical exam performed pursuant to 39-A M.R.S. § 312 (2007).[2]

[¶3] Because the 2007 decree established that Bailey's permanent impairment level exceeded 15%, he was eligible to receive ongoing

---

[2] Title 39-A M.R.S. § 312 (2007) has since been amended. P.L. 2015, ch. 297 § 11 (effective Oct. 15, 2015) (codified at 39-A M.R.S. § 312 (2016)).

compensation without a temporal "cap." *See* 39-A M.R.S. § 213(1) (2007).[3] The City did not appeal from the 2007 decree.

[¶4] In 2013, the City filed a petition seeking review of the level of Bailey's incapacity[4] and a second petition seeking to determine the extent of his permanent impairment. In support of these petitions, the City introduced the results of an updated medical examination that indicated that Bailey's level of permanent impairment had decreased to 0%.

[¶5] The hearing officer rejected Bailey's claims that the doctrine of res judicata precluded the City's petition to determine the extent of his permanent impairment, concluded that the new medical report constituted a change of circumstances warranting a new permanent impairment finding, and reduced Bailey's permanent impairment level to 0%. The decree terminated Bailey's entitlement to further compensation because his 0% permanent impairment rating ended his eligibility to receive benefits without a temporal restriction and because he had already received benefits for longer than the limit established for an injury resulting in 0% permanent impairment. *See* 39-A M.R.S. § 213(1)(A).

---

[3] Title 39-A M.R.S. § 213(1) (2007) has since been amended. P.L. 2015, ch. 297 § 8 (effective Oct. 15, 2015) (codified at 39-A M.R.S. § 213(1) (2016)).

[4] The Hearing Officer determined that the City had failed to show any change in the level of Bailey's incapacity, and the City did not challenge that issue on appeal to the Appellate Division.

4

[¶6]   Bailey subsequently appealed to the Appellate Division.  *See* 39-A M.R.S. § 321-B (2014).[5]  In a unanimous decision, the Appellate Division vacated the hearing officer's decree, concluding that the 2007 determination of permanent impairment as of the date of MMI was final, and therefore res judicata principles barred relitigation of that issue.  The Appellate Division further concluded that there existed no significant change of circumstances to warrant the hearing officer revisiting the issue of Bailey's MMI.

[¶7]   The City successfully petitioned for appellate review of the Appellate Division's decision.  *See* 39-A M.R.S. § 322 (2016).

## II.  DISCUSSION

[¶8]  The central issue on appeal is whether the doctrine of res judicata prevents a party from seeking to change the permanent impairment level associated with an employee's work-related injury after that level has been established by a prior decree.  The City argues that res judicata principles should not prevent it from seeking to reduce Bailey's permanent impairment level and contends that the Appellate Division erred in applying the doctrine of res judicata to the facts of this case.  Bailey, on the other hand, contends that the Appellate Division's decision was supported by the plain language of

---

[5]  Title 39-A M.R.S. § 321-B (2014) has since been amended.  P.L. 2015, ch. 297 § 16 (effective Oct. 15, 2015) (codified at 39-A M.R.S. § 321-B (2016)).

the statute, relevant case law, and policy concerns, and was therefore not erroneous. We conclude that the doctrine of res judicata bars relitigation of the permanent impairment level established for an employee's work-related injury and therefore affirm the Appellate Division's decision.

A.    Standard of Review

[¶9]  Previously, when a hearing officer or ALJ's decision was reviewed by the Appellate Division and subsequently appealed, we would review "the [hearing officer's or ALJ's] decision directly." *Freeman v. NewPage Corp.*, 2016 ME 45, ¶ 5, 135 A.3d 340. However, the Legislature has recently amended the workers' compensation statute to provide that "only a decision of the [appellate] division may be reviewed on appeal." 39-A M.R.S. § 322(1); *see* P.L. 2015, ch. 469, § 2 (effective July 29, 2016). Therefore, we now review decisions of the Appellate Division according to established principles of administrative law, except with regard to the hearing officer's or ALJ's factual findings.[6] *See Kroeger v. Dep't of Envtl. Prot.,* 2005 ME 50, ¶ 7, 870 A.2d 566 (explaining that we will only vacate an agency's decision where that decision "violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of

---

[6]  "[I]n the absence of fraud," the hearing officer's or ALJ's findings of fact are final. 39-A M.R.S. § 318 (2016); *see* 39-A M.R.S. § 322(3) (2016).

discretion; [or] is affected by bias or an error of law"). As we have consistently done in the past, we will continue to afford appropriate deference to the Appellate Division's reasonable interpretation of the workers' compensation statute, *see Hackett v. W. Express, Inc.*, 2011 ME 71, ¶ 9, 21 A.3d 1019, and will uphold the Appellate Division's interpretation unless "the plain language of the statute and its legislative history" compel a contrary result. *Guiggey v. Great N. Paper, Inc.*, 1997 ME 232, ¶ 10, 704 A.2d 375.

B.      Res Judicata and Permanent Impairment

[¶10]  "It is well established that a valid judgment entered by a court, if not appealed from, generally becomes res judicata and is not subject to later collateral attack." *Standish Tel. Co v. Saco River Tel. & Tel. Co.*, 555 A.2d 478, 481 (Me. 1989) (emphasis omitted). Likewise, "valid and final decisions of the Workers' Compensation Board are subject to the general rules of res judicata and issue preclusion." *Grubb v. S.D. Warren Co.*, 2003 ME 139, ¶ 9, 837 A.2d 117. Accordingly, "[a]bsent specific statutory authority, the Board may not reopen or amend a final decision. Such a rule ensures finality of workers' compensation decisions and effectuates the legislative desire for speedy and summary disposition of workers' compensation cases." *Guar. Fund Mgmt.*

*Servs. v. Workers' Comp. Bd.*, 678 A.2d 578, 583 (Me. 1996) (footnote omitted) (citations omitted) (quotation marks omitted).

1. Statutory Authority

[¶11] The workers' compensation statute provides that "[e]mployees with work-related injuries may be entitled to incapacity benefits for either total or partial incapacity, based on the difference between the employee's pre-injury wage and post-injury earning capacity." *Morse v. Fleet Fin. Grp.*, 2001 ME 142, ¶ 5, 782 A.2d 769; *see* 39-A M.R.S. §§ 211-213 (2016). When an injured worker is granted partial incapacity benefits, his entitlement to receive compensation is capped at 260[7] weeks unless it is determined that his "permanent impairment . . . resulting from the personal injury is in excess of 15%[8] to the body," in which case there is no statutory cap. 39-A M.R.S. § 213(1). "Permanent impairment," as defined by the statute, means "any anatomic or functional abnormality or loss existing after the date of *maximum medical improvement* that results from the injury." 39-A M.R.S. § 102(16)

---

[7] A claimant may petition for an extension, but the statute provides that such an extension may not exceed an additional 260 weeks. *See* 39-A M.R.S. § 213(4) (2016).

[8] The Legislature requires that the permanent impairment percentage threshold be reviewed yearly "so that 25% of all cases with permanent impairment will be expected to exceed the threshold and 75% of all cases with permanent impairment will be expected to be less than the threshold." 39-A M.R.S. § 213(2). The current threshold is 11.8%. 14 C.M.R. 90 351 002-1 § 1(1) (2014).

(2016) (emphasis added). "Maximum medical improvement" is defined as "the date after which further recovery and further restoration of function can no longer be reasonably anticipated, based upon reasonable medical probability." *Id.* § 102(15).

[¶12]  Read together, the above provisions provide for a 260-week cap for payment of benefits unless the injured employee's (1) "anatomic or functional abnormality" (2) exceeding 15% to his body (3) persists after the date on which "further recovery . . . can no longer be reasonably anticipated, based upon medical probability."  39-A M.R.S. §§ 102(15)-(16), 213.

[¶13]   Here, the Appellate Division's conclusion that relitigation of Bailey's permanent impairment level was barred by the doctrine of res judicata is supported by the statute's plain language and legislative history. Except for the very limited circumstances referenced in 39-A M.R.S. §§ 319 and 321, the workers' compensation statute provides no opportunity for a redetermination of a hearing officer's or ALJ's findings regarding permanent impairment or MMI.  *Cf. Hird v. Bath Iron Works Corp.*, 512 A.2d 1035, 1038 (Me. 1986) (concluding that the commission exceeded its authority in applying the doctrine of equitable estoppel where there was no "express or implied legislative authority" to do so).

[¶14]  This is in direct contrast to the statute's inclusion of explicit procedures for adjusting benefit levels when an injured employee's ability to be gainfully employed changes.  *See, e.g.,* 39-A M.R.S. § 205(9) (2016).  We apply the "changed circumstances" test in those cases, requiring the party seeking to "increase or decrease compensation in a workers' compensation case when a benefit level has been established by a previous decision . . . to show a change of circumstances . . . which may be met by either providing comparative medical evidence, or by showing changed economic circumstances."  *Grubb,* 2003 ME 139, ¶ 7, 837 A.2d 117 (quotation marks omitted) (citations omitted) (petition to recalculate benefit level); *see McIntyre v. Great N. Paper, Inc.*, 2000 ME 6, ¶¶ 1, 5-6, 743 A.2d 744 (petition for review of incapacity); *Folsom v. New England Tel. & Tel. Co.*, 606 A.2d 1035, 1036-1038 (Me. 1992) (petition for review of incapacity).

[¶15]  This distinction between the determination of MMI and permanent impairment on one hand and an employee's level of incapacity on the other reflects the Legislature's crafting of the workers' compensation statute to create a dichotomy of injured workers.  *See* 39-A M.R.S. § 213(1)(A), (2).  Those who have suffered workplace injuries that do not result in permanent impairment levels in excess of a specified whole person

percentage are eligible to collect compensation for no more than 260 weeks. *Id.* § (1)(A). On the other hand, those who have suffered particularly severe injuries that nonetheless result in only partial disability are eligible to receive ongoing benefits without temporal limitations. *Id.* The permanent impairment determination does not, however, govern whether a claimant is actually entitled to receive benefits, either during or beyond the 260-week limit. *See* 39-A M.R.S. § 205(9). Whether an employee actually *qualifies* to receive incapacity benefits is subject to a determination pursuant to 39-A M.R.S. § 205(9).

[¶16] A determination of permanent impairment as of the date of MMI is the method by which the Legislature chose to differentiate between these two classes of injured workers. If a party were able to disturb a permanent impairment finding so as to either terminate an employee's eligibility to receive ongoing benefits or award such eligibility after it had already been denied, the statute would be completely circumvented and the provisions creating the temporal dichotomy rendered superfluous. *See State v. Thompson*, 2008 ME 166, ¶ 12, 958 A.2d 887 ("We give statutory language its plain meaning and do not treat language as superfluous or meaningless . . . .").

[¶17]  Finally, by granting preclusive effect to decrees that establish MMI and permanent impairment for work-related injuries, the Legislature has minimized the expense and uncertainty associated with ongoing and repetitive litigation and helped to fulfill its "desire for speedy and summary disposition of workers' compensation cases."  *Dunphe v. O'Connor*, 1997 ME 147, ¶ 4, 697 A.2d 421 (quotation marks omitted).

2.      Change of Circumstances

[¶18]  The City next contends that the Appellate Division erred in concluding that the City failed to show a sufficient change of circumstances to warrant relitigation of the issue of Bailey's permanent impairment level. Because a "changed circumstances" analysis does not apply to a permanent impairment finding, that argument is unpersuasive.  *See* 39-A M.R.S. § 205(9). Therefore, the Appellate Division did not err in declining to apply that analysis here.

[¶19]  For the reasons set forth above, we affirm the decision of the Appellate Division vacating the hearing officer's grant of the City's petition to determine the extent of Bailey's permanent impairment.

The entry is:

Judgment affirmed.

John H. King, Jr., Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellant City of Lewiston and Cannon Cochran Management Services

Benjamin DeTroy, Esq. (orally), Leary & DeTroy, Auburn, for appellee Michael J. Bailey

James J. MacAdams, Esq., Nathan A. Jury, Esq., and Donald M. Murphy, Esq., MacAdam Law Offices, Portland, for amicus curiae the Maine Building Trades

Workers' Compensation Board Appellate Division case number 14-0050
FOR CLERK REFERENCE ONLY